RACHEL RIGG, appellant, *v.* JOHN COOK, who sues by his next friend, A. G. Edwards, appellee.

*Appeal from St. Clair.*

A. settled on certain lands, and to secure the title, purchased of B. certain Militia claims. To secure the purchase money and other indebtedness to B., he mortgaged the lands to him with a covenant of warranty. The claims were afterwards confirmed, and the lands entered with them: *Held*, that A. although he had not the legal estate at the time of executing the mortgage, by entering the land, acquired it, and that the same enured to the benefit of the mortgagee: *Held*, also, that A. and all persons claiming through him were estopped by the covenant of warranty contained in the mortgage from asserting any title as against the mortgagee and those claiming under him.

Where a Court has authority to order a sale of land and a sheriff to make such sale, the errors of the one and the irregularities of the other must be inquired into and corrected directly, and not collaterally; either by a resort to an appellate tribunal, or a direct application to the Court issuing the process, and having the right to control it.

A witness was inquired of as to the control of the property of a deceased person: *Held*, that the inquiry was proper.

A witness was asked to state all that was said by a person in possession of land at a time when he paid rent, relating to and explanatory of such payment: *Held*, that the statements accompanying the payment of the rent were a part of the *res gestæ*, and were admissible for the purpose of illustrating the character of the transaction, and explaining the object and intention of the party.

While a tenancy exists, the tenant cannot dispute the title of his landlord, either by setting up a title in himself or a third person. The possession of the tenant is the possession of the landlord as long as the tenure is acknowledged. It is not until the tenure is denied, and the fee claimed adversely, that the possession assumes a hostile character and the Statute of Limitations begins to run.

Where a possession has been consistent with or in submission to the title of the real owner, nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of such owner will render the possession, however long continued, adverse.

A party has the right to have the jury polled on the receipt of the verdict, whether it is brought in sealed or delivered *ore tenus* by the foreman. This right, however, must be exercised before the jury are discharged.

A direction to the jury to seal up their verdict and separate, does not dispense with their personal attendance in Court when the verdict is opened; and if any of them then dissent, the verdict cannot be received.

After a verdict is received, and the jury discharged, the control of the jury over the case is at an end, and they cannot be recalled to alter or amend the verdict.

EJECTMENT, in the St. Clair Circuit Court, brought by the appellee against the appellant, and heard before the Hon.

Gustavus P. Koerner and a jury, at the May term 1847. Verdict and judgment for the plaintiff.

The evidence and instructions on the trial in the Court below, are stated in the Opinion of this Court.

*W. H. Underwood,* for the appellant.

1. The four militia claims mortgaged by Hosea Rigg and wife to Perry, were confirmed under an Act of Congress of March 3d, 1791, the sixth section of which authorized the Governor of the Northwest Territory to make a grant of not exceeding one hundred acres of land, to certain persons who had done military duty at Vincennes, to be laid in such form and place as said Governor should direct. Public Land Laws, &c. Part I, 42. The claims in question were unlocated grants at the time of the making of the mortgage in question. Afterwards, by an Act of Congress of February 20th, 1812, commissioners were appointed to inquire into the validity of claims derived from confirmations of the Governors under the above Act. Ib. 198, § 1. Afterwards, on the 16th day of April, 1814, an Act of Congress was passed, confirming the claims in question among other claims, setting apart a district for the same to be entered, and allowing persons having such unlocated claims to enter lands therein, by giving in exchange the old confirmations. Ib. 244–6, §§ 2, 3, 4, 6.

The mortgage was given of claims which were inchoate, and were chattels real, (5 Johns. Ch. R. 227,) and, at the time it was given, it was presumed from the description in the mortgage, that it would have been located under the Act of 1791. The fact that the mortgaged claims were exchanged afterwards under a subsequent Act of Congress, did not enable the mortgagee or his representatives to proceed at law against the property taken in exchange for the mortgaged chattels. 3 Gilm. 463; 13 Peters, 498, 450. The foreclosure at law only transferred the title of the mortgagor in the mortgaged property at the time of the execution of the mortgage. *State Bank* v. *Wilson,* ( *ante* 57,); 4 Scam. 364.

2. The execution against Rigg and wife ought not to have been admitted in evidence, because it varied from the

Rigg v. Cook.

judgment in names of parties. *Williams* v. *Claytor*, 1 Scam. 505; *Blanchard* v. *Blanchard*, 3 Iredell, 107; and because the property directed to be sold is uncertain, and the execution, therefore, void. *Fitch* v. *Pinkard*, 4 Scam. 83. To make a judicial sale valid, there must be a legal judgment, and an execution authorized by such judgment against the property sold. *Curtis* v. *Doe*, Bre. 100; *Hinman* v. *Pope*, 1 Gilm. 136; *Atkins* v. *Hinman*, 2 do. 448.

3. The mortgage not being of the land in question, the title afterwards acquired in 1814 and perfected by Patent in 1840 in Rigg, does not enure to the benefit of the purchaser on the mortgage. By the Common Law, a subsequent title only enures where there is a warranty of title to the particular land. 11 Ohio, 253; 1 Cowen, 616; 9 do. 18; 1 Wend. 502. Our statute in relation to titles enuring, in force July 1st, 1827, (long after this mortgage was made and foreclosed,) only applies to a case where a grantor conveys in fee simple absolute. § 7.

4. The Patent to Rigg in 1840 is conclusive evidence of title in him at that time, and merges all previous equities in a *Court of Law*. 13 Peters, 498, 450, 517.

5. The Court below erred in permitting Davis to testify who had the control of Gov. Edwards' real property after his death; that is a question of law. And also who administered upon his estate; that should have been proved by the records of the Probate Court. *Williams* v. *Jarrot*, 1 Gilm. 129.

6. The statements made by Rigg at the time of paying rent were admissible as a part of the *res gestæ*. 1 Greenl. Ev. 123, §§ 108–9; 1 Starkie's Ev. 36; 2 J. J. Marsh. 383. The payment of rent, as rent, is always open to explanation. Chitty on Con. 260; 1Eng. Com. Law R. 355.

7. The doctrine of estoppel is construed strictly, and must be certain to a certain *intent*. 1 Greenl. Ev. 26, § 22. By the Common Law, a tenant is not estopped from denying the title of his landlord, except a tenant by indenture. The latest decisions are, that only a tenant by indenture and one who enters upon land under his landlord's title, is estopped from denying the landlord's title. 2 Smith's Leading Cases,

472; 2 Thomas' Coke, 331; 7 Wend. 403; 12 do. 108; 1 Greenl. Ev. § 25.

*L. Trumbull,* for the appellee.

I. The witness, Davis, was not asked who administered upon the estate of N. Edwards, and his statement that Mrs. Edwards was executrix was uncalled for and wholly immaterial, as the will of said Edwards, also in evidence, established that fact. Davis was required to state, and did testify all that Rigg said about the payment of rent and explanatory thereof, and the refusal of the Court to permit said witness to state what Rigg told him upon other subjects, was right.

II. By the payment of rent and the mortgage with covenants of warranty, Rigg was estopped from disputing plaintiff's title. 3 Peters, 48; 1 Greenl. Ev. § 24.

III. The militia claims were real estate. 15 Peters, 93. A title to land becomes a legal title when confirmed, and such confirmation is a higher evidence of title than a Patent. 2 Howard's (U. S.) R. 344.

A confirmation to the original claimant and his legal representatives enures by way of estoppel to the grantee of the original claimant. 1 Ohio Cond. R. 181, 487; 5 Ohio, 337; 1 Ld. Raymond, 729; 12 Johns. 204; 4 Bibb, 436; Adams' Ej. 47, 48, and 306 and notes. 2 Gilm. 541; 4 Peters, 85.

The Patent to Rigg cannot be construed to operate against his grantee. 2 Howard's (U. S.) R. 316, 344.

IV. The generality of the objection made by defendants below to the admissibility in evidence of the record and proceedings upon the foreclosure of the mortgage, precludes the party from pointing out any specific objections in this Court.

A general objection to the introduction of testimony is vague and nugatory, and without weight in an appellate Court. *Camden* v. *Doremus,* 3 Howard's (U. S.) R. 530. If it were admissible to raise the objections at this time, they would not be tenable. There is no variance in parties or amount between execution and judgment when carefully examined.

All questions arising on judicial sales, when their validity is questioned in an ejectment suit, must be those of *authority*, not *irregularity*, or *error* in awarding, executing or confirming process. 1 Baldwin's C. C. R. 271, 272.

The regularity of the execution cannot be questioned collaterally. *Buckmaster* v. *Carlin*, 3 Scam. 111; *Swiggart* v. *Harber*, 4 do. 364; *Voorhies* v. *U. S. Bank*, 10 Peters, 474.

V. Defendant's right to poll the jury was waived by the agreement of counsel dispensing with the further attendance of the jury; at all events, it is matter of discretion. 2 U. S. Dig. 696, § 296.

The Opinion of the Court was delivered by

TREAT, J.   This was an action of *ejectment*, commenced in the St. Clair Circuit Court, on the 23d of October, 1845, by John Cook against Rachel Rigg, for the recovery of the south east fractional quarter of section twenty three, and the north fractional half of section twenty six, in township one north of range eight west, containing three hundred and thirty nine acres, and eighty five hundredths of an acre.

On the trial before the jury, the plaintiff read in evidence four several deeds of assignment of military claims from Jean B. Robillard, Michael Chartran, Charles Lefoevre, and Regis Martin to Jean F. Perry, bearing date in 1803, also a warranty deed, for the consideration of $800, from Perry and wife to Hosea Rigg, for the four militia claims, dated the 2d of May, 1808; also a mortgage from Rigg and wife to Perry, bearing date the 3d of May, 1808, in which the mortgaged premises are thus described: "all those four several tracts or quantities of one hundred acres of land, which, by a law of the United States, were severally granted to Michael Chartrand, Charles Lefoevre, Regis Martin, and Jean Baptiste Robillard, as being militia men in the Illinois country, on the first day of August, one thousand seven hundred and ninety, and had done militia duty therein, and who, by several deeds recorded in the recorders office, had conveyed the same to the said Jean F. Perry, and which the said Jean F. Perry conveyed to the said Hosea Rigg, in fee

simple by deed dated the second instant, and which said four hundred acres of land are laid in the improvement of the said Hosea Rigg, where he now resides, at Turkey Hill aforesaid," and which mortgage was given to secure the payment of $1544, and contained a covenant of general warranty. The plaintiff then proved by the certificate of the Commissioner of the General Land Office, that the claims of one hundred acres each were confirmed to Jean F. Perry, as the assignee of Robillard, Chartran, Martin and Lefoevre, on the 15th of January, 1813. He then introduced a certificate of the register of the land office at Kaskaskia showing that Hosea Rigg did, on the first day of October, 1814, enter the south east fractional quarter of section twenty three, and the north fractional half of section twenty six, in township one north of range eight west, which contain by the certificate of Elias Bancroft, deputy surveyor, three hundred and thirty nine acres, and eighty five hundredths of an acre, and paid for said fractional quarter and fractional half of sections aforesaid, with his confirmed unlocated claim to three hundred and thirty nine acres, and eighty five hundredths of an acre, being the whole claim of Jean B. Robillard of one hundred acres, the whole of the claim of Regis Martin of one hundred acres, the whole of the claim of Michael Chartran of one hundred acres, and part of the claim of Charles Lefoevre of one hundred acres, which said claims appear of record in the books of this office, to have been confirmed as militia claims to Jean F. Perry, as assignee of the said Robillard, Chartran, Martin and Lefoevre; also another certificate from the same officer, showing that Rigg, at the date of his entry, established a right of pre-emption to the north fractional half of section twenty six, by proof that he cultivated and improved the same, prior to the 5th of February, 1813.

The plaintiff then read in evidence certain entries from the records of the St. Clair Circuit Court, which showed that at the September term 1822, in a proceeding by *scire facias* to foreclose a mortgage, entitled "Adelaide Pensoneau, by her intermarriage, &c. *v.* Hosea Rigg, and Han-

nah, his wife," a verdict was returned in favor of the plaintiff for $2686, for which amount and the costs the plaintiff had judgment, with a general award of execution, and the plaintiff remitted $104·96 of the judgment; that at the March term 1823, the record was so amended as to show that the *remittitur* was of a part of the verdict, and not of the judgment, and that the execution ordered was a *levari facias.* It appeared from these entries that the suit was contested. The plaintiff then introduced an execution issued out of the same county, on the 28th of March, 1823, commanding the sheriff of St. Clair county, "that of that certain tract of land with the appurtenances thereunto belonging in said county, containing four hundred acres, be it more or less, being the same tract on which Hosea Rigg and Hannah his wife lately resided on, and being the same mentioned in the mortgage deed in the *scire facias* set out, you cause to be made as well the sum of two thousand five hundred and eighty one dollars and four cents, with interest to be computed thereon from the ninth of September last, which Adelaide Pensoneau by her intermarriage with Augustin Pensoneau deceased, administratrix with the will annexed of all &e. of Jean Francois Perry deceased, lately in our Circuit Court of said county recovered against the said Hosea Rigg and Hannah, his wife, in damages, by reason of the non-performance of the covenants in the said *scire facias* mentioned, as also the sum of thirty dollars and forty two cents for the costs and charges about her suit in that behalf expended." On this writ, the sheriff made return, that he levied the same on the land in question on the 9th of April, 1823, and sold the land on the 26th of that month for the sum of $1004·64. The defendant objected to the introduction of the judgment, the execution, and the sheriff's return, and excepted to the decision of the Court allowing them to be read in evidence. The plaintiff proved that the lands were duly appraised before the sale, and then introduced a sheriff's deed to Adam W. Snyder, the purchaser at the sale, dated the 3rd of September, 1823, for the lands in question; also, a warranty deed from Snyder and wife, to the late Gov. Edwards; also,

legal conveyances from the heirs at law of Gov. Edwards to the plaintiff.

The plaintiff then called William C. Davis, who testified that Gov. Edwards died between 1831 and 1834, leaving Elvira Edwards, his widow, and certain persons, his heirs at law. Witness did not know the land in dispute by the numbers, but Hosea Rigg resided on it, and paid a rent of $25 per year for two years between 1836 and 1840, to witness for Mrs. Elvira Edwards. Witness acted as the agent of Mrs. Edwards and the family, and Rigg did not object to the payment of the rent. The plaintiff's counsel then asked the witness who had the control of Gov. Edwards' property after his death; to the answering of which question, the defendant objected, but the Court overruled the objection, and the witness stated that Elvira Edwards, executrix, controlled the property and managed it for herself and children. The defendant's counsel then asked the witness if Rigg did not say, when he paid the rent, that he was defrauded by Snyder and Edwards in the land transaction, and to state all that he then said about the title to the land; but, on an objection by the plaintiff's counsel, the Court refused to allow the question to be answered, but instructed the witness to state all that Rigg said in relation to and explanatory of the payment of rent, but not to state what he said in relation to the title of the former owners of the land, and as to his once having paid the mortgage. The witness proceeded to state, that at the time of the payment of the rent, Rigg said he was under great obligations to Gov. Edwards, who had promised to let him have the premises as long as he, (Edwards,) lived, and he then expected that Gov. Edwards would live longer than himself; that he expected to pay the rent with his pension money, and had been in the habit of paying rent when the pension agent came around; that at this time, Rigg had an inclosure of thirty acres on the land, and was eighty or ninety years of age.

Joseph Scott testified, that Rigg lived on the land in 1797, and afterwards had two mills on the land, and forty acres in cultivation; that Rigg, up to his death, claimed and used the

Rigg v. Cook.

land as his own; that the defendant always resided on the land with her father, and since his death has used and claimed the land as her own.

William Moore swore, that Rigg's improvement was on the north fractional half of section twenty six; that from 1820, W. G. Brown claimed one hundred acres of the land, and for some years has had an inclosure thereon; that Rigg had possession of the land in 1814, and cultivated and claimed it as his own to his death, and the defendant has claimed the part unsold since.

Joseph Newberry stated, that there was a small improvement on the north part of the land, on which the defendant resided; and he advised her before the commencement of the suit, to sell the land, but she replied she had gained it, and wanted a home.

The defendant then introduced a Patent from the United States to Hosea Rigg, for the land in question, dated the 22d of October, 1840; also a deed from Hosea Rigg to the defendant, for the north fractional half of section twenty six, dated July 1st, 1841. She then proved by Alexander Scott, that Rigg settled on his improvement in 1801, and resided there till his death, claiming and using it as his own.

Hardy Johnson stated, that he had fourteen acres of the land inclosed at the commencement of the suit; that Davis Pulliam had also an inclosure of twelve acres.

The defendant then introduced a deed from her to Johnson for fourteen acres of the land, dated the 25th of March, 1843; also a deed from her to Pulliam for twelve and a half acres, dated the 9th of October, 1845.

The defendant then offered to prove by a witness, that A. W. Snyder paid, in fact, nothing for the land, and that witness employed Gov. Edwards as an attorney, in 1818, to examine into the title to the land; and that Edwards afterwards purchased the land, well knowing that Snyder paid nothing for it; which evidence was objected to and excluded by the Court. This was all of the evidence.

The Court, at the instance of the plaintiff, gave the following instructions: *First*, if the jury believe from the evidence,

that Hosea Rigg occupied the premises described in the declaration, or a part thereof, as the tenant of the plaintiff or of those from whom he derives title, and paid rent therefor, then the said Hosea Rigg and those claiming under him are estopped by such payment of rent, from questioning that those to whom he paid rent, had at the time title to the land. *Second*, that the possession of the land in question for more than twenty years by the defendant, or those under whom she claims, is no bar to the recovery of the plaintiff in this suit, if they believe that such possession was in submission to the title of the plaintiff, or those from whom he claims. *Third*, that possession, in order to bar the claim and right of the plaintiff in this suit, must be adverse to the plaintiff's title; and a possession for more than twenty years consistent with the plaintiff's title constitutes no defence to this action. *Fourth*, that the only question in this case is between John Cook and Rachel Rigg, and that the jury in this case have nothing to do with the rights of other persons. *Fifth*, that the jury have no right to draw any inference unfavorable to the plaintiff by reason of his objecting to the introduction of testimony, which was excluded by the Court as improper. *Sixth*, that the mortgage from Rigg and wife to Perry is a mortgage of real estate. *Seventh*, that the Patent issued to Hosea Rigg in 1840 enures to the benefit of his mortgagee, and those claiming under him; and the issuing of said Patent to Rigg in 1840 cannot be set up in this case to defeat the title derived from Rigg, for the same land and before the Patent issued. *Eighth*, that the claims of innocent purchasers not parties to this suit, have nothing to do with this case; and their titles and possessions obtained before the commencement of this suit are not affected by the decision in this case. *Ninth*, that if the jury believed from the evidence, that the defendant's only claim to the land in question is derived from Hosea Rigg, and that said Hosea Rigg, before the Patent issued for the land, mortgaged the same to one Perry with a covenant of warranty, and that the plaintiff has shown a connected title from said Perry to himself, then the said defendant is estopped from setting up the title

acquired by the issuing of said patent against the said plaintiff. The defendant excepted to the giving of these instructions.

Before the jury retired, it was agreed by counsel, that the jury might seal up their verdict and separate, and that the verdict might afterwards be reduced to proper form. The jury accordingly made up a sealed verdict as follows, " we the jury find the defendant guilty," which was opened the next morning at ten o'clock; and at two o'clock of the same day, it was reduced to form by the plaintiff's counsel, to which the defendant made no objection, but asked that the jury, which had not then been discharged for the term, might be polled; which request the Court denied, and the defendant excepted. The verdict, as finally entered, finds the defendant guilty of withholding the possession of the land in question from the plaintiff, who is entitled to an estate in fee therein; except as to the part claimed by Brown, Johnson, and Pulliam, as stated in the evidence, of which part the defendant is not guilty. The Court overruled a motion for a new trial, and rendered judgment on the verdict. The defendant prosecuted an appeal to this Court.

For a full understanding of this case, it may be proper to look into the origin and character of these militia claims. The sixth section of the Act of Congress of the 3rd of March, 1791, conferred authority on the Governor of the Territory northwest of the Ohio, to make a grant of land not exceeding one hundred acres, to each person who had not obtained any donations of land from the United States, and who, on the first of August, 1790, was enrolled in the militia at Vincennes, or in the Illinois country, and had done militia duty therein; the land to be laid out at the expense of the grantees, and in such place and form as the Governor might direct. 1 Story's Laws, 203, ch. 101. The Act of the 20th of February, 1812, appointed commissioners to inquire into and report upon the validity of claims to land in the Kaskaskia Land District, which were derived from confirmations made or pretended to have been made by the Governors of the Northwest and Indiana Territories. 2 Story's Laws,

1213, ch. 22. The Act of the 16th of April, 1814, confirmed the claims reported by the commissioners, and set apart a certain tract of country within the Kaskaskia Land District, to satisfy the unlocated claims of persons to land within the Illinois Territory, confirmed to them theretofore, or by that Act; and gave to every person residing within the reserved district, and who had actually cultivated or improved a tract of land therein prior to the 5th of February, 1813, a right of pre-emption in the purchase of not less than one quarter section, nor more than one section, including his improvement, the entry to be made on or before the first day of October, 1814; and authorized the purchaser, if the owner of any un-located confirmed land claim, to deliver the evidence there-of to the receiver, in full payment of the quantity of acres contained in the claim. The Act further provided, that after the first of October, 1814, the land within the reserved district should be subject to entry by any person being the owner of unlocated confirmed land claims. 2 Story's Laws, 1415, ch. 120.

It appears from the evidence, that Rigg settled on the land in controversy as early as the year 1801, and continued in the actual possession until his death, subsequent to the 1st of July, 1841. In 1808, he purchased the militia claims for the purpose of securing the title to the land. To secure Perry in the payment of the purchase money and other indebted-ness, he mortgaged the four hundred acres called for by the claims, which were described in the mortgage as laid in the improvement, where he then resided. The claims were not confirmed, and could not, therefore, be so appropriated as to vest in Rigg the legal estate in the land; but the mortgage gave them a fixed and definite location on the land claimed and improved by Rigg. It was no doubt the understanding of the parties, that the claims should be applied in obtaining the title to the land then claimed by Rigg; and that the mort-gage should embrace this identical land, and not a floating right to that number of acres anywhere in the country. Rigg, intending in good faith to carry this design into effect, did not hesitate to mortgage the land of which he expected to

become the legal owner; and the more effectually to secure Perry, he covenanted to warrant and defend the title. The claims were confirmed in 1813, and Rigg, availing himself of the right of pre-emption, founded on his residence and improvements, entered the land with the claims, in 1814, and thus acquired the legal estate. We entertain no doubt that the mortgage was intended to embrace the land in question. The difference in quantity was probably the result of subsequent surveys and sub-divisions, not then in the contemplation of the parties. That cannot affect the validity of the mortgage as to the part actually entered by Rigg. If the land purchased by Rigg in 1814, was the same mortgaged by him to Perry in 1808, the after-acquired title enured to the benefit of the mortgagee; and Rigg, and all persons claiming through him, are estopped by the covenant of warranty contained in the mortgage, from asserting any title as against the mortgagee, and those claiming under him. On this point, the authorities are uniform and conclusive. 4 Kent's Com. 98; *Jackson* v. *Matsdorf*, 11 Johns. 91; *Jackson* v. *McCrackin*, 14 do. 193; *Terrett* v. *Taylor*, 9 Cranch, 43; *Somes* v. *Skinner*, 3 Pick. 52; *White* v. *Patten*, 24 do. 324; *Allen* v. *Parish*, 3 Ham. 107; *Bond* v. *Swearingen*, 1 do. 395.

The mortgage being a valid one of the lands in dispute, the question arises, was the title of Rigg divested by the proceedings to foreclose the mortgage? These proceedings are evidence in a collateral action, and in determining upon their validity, the only question is one of authority; whether the Court pronouncing the judgment had the power to adjudicate upon the rights of the parties under the mortgage, not whether its decision was correct, or erroneous; and whether the sheriff had authority to execute the process of the Court, not whether his acts under it were regular or irregular. If the Court had jurisdiction of the case, and the officer authority to make the sale, the errors of the one, and the irregularities of the other, are to be inquired into and corrected directly, and not collaterally; either by a resort to an appellate tribunal, or a direct application to the Court issuing the

Rigg v. Cook.

process, and having the right to control it. *Voorhees* v. *The Bank*, 10 Peters, 449; *Buckmaster* v. *Carlin*, 3 Scam. 104; *Swiggart* v. *Harber*, 4 do. 364. The Act of March 22d, 1818, provided for the foreclosure of a mortgage upon a *scire facias* to the mortgagor sued out by the mortgagee, his heir, executor, administrator or assignee, and authorized a sale of the mortgaged premises on process of *levari facias*, after an appraisal of the property, and upon twenty days' notice of sale. Laws of 1819, page 177. By the Act of the 17th of February, 1823, the sheriff was required to give but fifteen days' notice of the sale. Laws of 1823, page 169. The remedy pursued in the foreclosure of the mortgage was authorized by the statute. The Court had jurisdiction of the subject matter, and acquired jurisdiction over the persons of the parties; and its decision must be regarded as conclusive of their rights under the mortgage. The process issued for the enforcement of the judgment was a legal one, and justified the sheriff in levying on and selling the land in question. If there was error in the judgment, the mortgagor might have procured its reversal; if the proceedings under it were irregular, the Court would have set them aside on his application.

It is insisted that there are fatal variances between the judgment introduced in evidence, and the one set out in the execution, in the amount of the judgment, and in the names of the parties. The answer to the first objection is, that the judgment as amended at the subsequent term corresponds precisely in amount with the one described in the writ. There is no substantial variance in the names of the parties. The name of the plaintiff is the same, both in the record of the judgment, and in the process; the only difference being in the description of the person, or the character in which she sued. This description is abbreviated in the entry of the judgment, while it is set out at length in the execution. The two descriptions are consistent with each other, and clearly indicate the same person.

It is contended that the sale by the sheriff was void, because twenty days did not intervene between the levy and

the sale. The Act of the 17th of February, 1823, in force when the proceedings on the execution took place, required but fifteen day's notice of the sale. The sheriff, therefore, had time to give the required notice.

The estate of the mortgage was divested by these proceedings, and vested in the purchaser at the sheriff's sale; and that estate, by intermediate conveyances, has passed to the appellee.

The offer of the appellant to prove that Snyder paid nothing, in fact, for the land, and that this was known to his grantee before he purchased it, was properly refused by the Court. The land was sold to Snyder for more than a thousand dollars, and Rigg received a credit on the judgment to that extent. Whether the plaintiff in the judgment, or the sheriff, ever received payment of this amount, was a matter of no importance to Rigg, or the appellant. That was a matter exclusively between the plaintiff, the sheriff, and the purchaser.

The Court did not err in permitting the witness to state who had the control of Governor Edwards' property after his death. This testimony was not called out with a view of showing who was the personal representative of Edwards; but for the purpose of ascertaining who had the management of the property. The appellee did not offer to prove by the witness who was the executor of Edwards. The letters testamentary would have been the best evidence of that fact.

The Court properly allowed the witness to state all that Rigg said at the time he paid the rent, relating to, and explanatory of such payment. These statements accompanying the act of payment, were a part of the *res gestæ;* and admissible for the purpose of illustrating the character of the transaction, and explaining the object and intention of the party. But the declarations of Rigg, respecting the payment of the mortgage, and the title of the former owners of the land, were properly excluded by the Court. These matters were foreign to the question of the payment of the rent, not tending to explain or elucidate it. If the mortgage was paid, that would have been a good answer to the appli-

Rigg *v.* Cook.

cation to foreclose it; and the defence should have been in= terposed in that proceeding. The fact that the mortgage was unpaid was *res adjudicata;* and the judgment must for= ever be conclusive of that question. The title of the parties under the mortgage had long since vested, and was not to be impeached by the declaration of a party interested in defeating it. It was a clear attempt on the part of the ap= pellant to prove facts indirectly, and by testimony coming from an interested source, which she would not have been allowed, on any principle of law, to do directly and by dis= interested testimony.

The appellant can claim no right to the land in consequence of an adverse possession. The possession of her ancestor was subservient to the title derived under the mortgage, as late, at least, as 1836. After that time, he voluntarily paid rent to the heirs of Gov. Edwards, and thereby admitted himself to be their tenant. Even if adverse from that period, the possession had not ripened into a right when this suit was commenced, the right of entry of the real owner not being barred until an adverse possession of twenty years. While a tenancy exists, the tenant cannot dispute the title of his landlord, either by setting up a title in himself, or a third person. The possession of the tenant is the possesion of the landlord as long as the tenure is acknowledged. It is not until the tenure is denied, and the fee claimed adversely, that the possession assumes a hostile character, and the Stat= ute of Limitations begins to run. And where the possession has been consistent with, or in submission to the title of the real owner, nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of such owner, will ren= der the possession, however long continued, adverse. *Wil= lison* v. *Watkins,* 3 Peters, 43; *Zeller* v. *Eckert,* 4 Howard's (U. S.) R. 289; *Jackson* v. *Burton,* 1 Wend. 341.

There was no error in the instructions of the Court. The law of the case was fairly and correctly stated to the jury.

A party has the right to have the jury polled on the receipt of the verdict, and a denial of the right is error. *Johnson* v. *Howe,* 2 Gilm. 342. It makes no difference

whether the verdict is brought in sealed,. or delivered *ore tenus* by the foreman. *Fox* v. *Smith*, 3 Cowen, 23; *Jackson* v. *Hawks*, 2 Wend. 619. A direction to the jury to seal up their verdict and separate, does not dispense with their personal attendance in Court, when the verdict is opened; and if any of them dissent, the verdict cannot be received. *Root* v. *Sherwood*, 6 Johns. 68; *Lawrence* v. *Stearns*, 11 Pick. 501. After a verdict is received and the jury discharged, the control of the jury over the case is at an end, and they cannot be recalled to alter or amend the verdict. *Sargent* v. *The State*, 11 Ohio, 472. When the verdict was opened in the present case, the appellant might have insisted on her right to have the jurors severally asked if it was their verdict; but omitting to exercise the right then, she was precluded from doing it afterwards. As we understand the bill of exceptions, the verdict was received by the Court in the presence of the jury; and the jury were then discharged from the case, with an existing stipulation of counsel, that the verdict might afterwards be reduced to form and entered of record. The right of the appellant to have the jury polled was gone, for the reason that the control of the jury over their verdict had ceased. She had still the right to insist that the real finding of the jury should be pursued in putting the verdict into form. No objection on this score was taken, and could not with any show of propriety have been; for while the verdict, as returned by the jury, was for the whole of the premises claimed, the verdict as finally entered was but for a part of the premises. This modification was not to her prejudice.

The judgment of the Circuit Court is affirmed, with the costs of this appeal.

*Judgment affirmed.*