## BENJAMIN B. LINCOLN *vs.* JAMES EMERSON.

The owner of land mortgaged it by two successive deeds, the second of which contained full covenants of warranty. The first mortgagee entered, authorized the mortgagor to occupy, and died intestate, leaving the mortgagor his sole heir and next of kin. *Held,* that the mortgagor was not entitled to possession as against the second mortgagee, either under the authority of the first mortgagee, because such authority was revoked by his death, nor by descent from the first mortgagee, because he was estopped by the covenants in the second mortgage.

An assignment of his interest by a second mortgagee is not rendered invalid by the fact that before it was made he had been ousted from possession of the mortgaged land by one claiming under a prior mortgage thereof from the same mortgagor.

TORT for breaking and entering the plaintiff's close in Mill-bury. At the trial in the superior court, before *Brigham*, C. J., it appeared that the defendant was seised of the land in question, and mortgaged it on August 30, 1852, to Albert Benchley ; and that on the same day he made a second mortgage thereof to Jonas Brown, by a deed in which he covenanted that the land was free from all incumbrances except the mortgage to Benchley, and also covenanted that he would warrant and defend the premises against the lawful claims and demands of all persons. On May 2, 1863, Brown entered to foreclose, and the certificate of entry was duly recorded. On May 4, 1863, Brown assigned his mortgage to Benjamin F. McIntyre, who occupied the land until April 26, 1864, on which day Benchley entered under the mortgage to him and on the next day assigned his mortgage to George W. Emerson, a son of the defendant. After this assignment, the defendant occupied the land, without the consent of McIntyre, until August 27, 1864, when George W. Emerson died, intestate, un

married and without issue. After his son's death, the defendant continued his occupation. On December 25, 1865, McIntyre assigned the second mortgage to the plaintiff, and in April 1870 the plaintiff entered and forbade the defendant to occupy, but the defendant did afterwards enter and plough up a part of the land, which was the alleged trespass. The defendant justified under the first mortgage, the assignment of it to his son, and authority from the latter to him to occupy and improve the premises.

Upon the foregoing facts, the plaintiff requested the judge to instruct the jury as follows:

"1. That the death of the son, unmarried, intestate and without issue, operated as an extinguishment of the first mortgage 2. That at the time of the entry of the plaintiff, in April 1870, the relation of mortgagor and mortgagee existed between the plaintiff and the defendant. 3. That a mortgagee has a right of entry and of possession immediately upon the execution of the mortgage. 4. That a mortgagor entering before performance of the condition of his mortgage is a trespasser, unless he does so by leave of the mortgagee. 5. That the defendant is estopped by his covenant in the second mortgage to claim any right to the possession in himself under the first mortgage."

The judge refused to instruct the jury as prayed for, but instructed them as follows:

"1. The mortgage of the defendant to Benchley gave to him, or to any person to whom a valid assignment of that mortgage was made, a right to the possession of the land to which such mortgage related, not inferior to the right of a later mortgagee of the same land, under whom the plaintiff claims. 2. In the present case, the defendant would have this right of possession as against the plaintiff, derived from the defendant's mortgage to Benchley; and if his son, George W. Emerson, became, by purchase, assignee of the mortgage to Benchley, and appointed or authorized the defendant to hold the premises as his agent, under such right, derived from such appointment and authority he was justified in the acts claimed by the plaintiff to be wrongful to him. 3. If, however, the defendant, under the pretence

of procuring and obtaining, as agent of his son, George W. Emerson, an assignment of the mortgage, in fact paid the debt secured by that mortgage on his own behalf, that mortgage was discharged, and was inoperative to affect the right of the second mortgagee, Brown, and those claiming under him. 4. If the first mortgage to Benchley had been discharged, and was inoperative as against the second mortgage, the plaintiff, as assignee of the second mortgage, had a right to possession of the mortgaged premises, and having exercised that right, and entered upon the possession, any disturbance of his possession by the defendant was a wrongful act towards the plaintiff, and he may recover damages therefor. 5. The entry of Brown on May 2, 1863, under the mortgage to him, continued by him and by McIntyre, as the assignee of that mortgage, for the period of three years, would operate as a foreclosure of the mortgage, and consummate the title of McIntyre, and the plaintiff would acquire the same, so as to enable him to maintain his action against the defendant, if he entered upon the premises, or did any act in tilling or improving the same, adverse to the plaintiff. 6. An entry to foreclose a mortgage must be followed by a continuous, uninterrupted and peaceful possession for three years, to operate as a foreclosure. 7. A mortgagee has a right to the possession of the premises mortgaged to him, irrespective of any proceedings or entry by him for the purpose of foreclosing his mortgage, and, when he has exercised that right by taking possession, any disturbance of his possession by the mortgagor is wrongful, for which he may recover damages."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*J. Hopkins*, for the plaintiff.

*F. T. Blackmer*, for the defendant. The second mortgage prevented the first mortgage from becoming merged in the defendant's estate upon his son's death. *Evans* v. *Kimball*, 1 Allen, 240. *Loud* v. *Lane*, 8 Met. 517. *Hunt* v. *Hunt*, 14 Pick. 374. 4 Kent Com. (6th ed.) 103. The first mortgage will become the property of the administrator of the estate of George W. Emerson, whenever one shall be appointed. Gen. Sts. *c.* 96, § 9.

Nothing passed by McIntyre's assignment of the second mortgage to the plaintiff, inasmuch as McIntyre was then disseised. *Poignard* v. *Smith*, 6 Pick. 172. *Poignand* v. *Smith*, 8 Pick. 272. *Richardson* v. *Hildreth*, 8 Cush. 225. *Dadmun* v. *Lamson*, 9 Allen, 87. The defendant claimed, not in his own right, but as agent for his son; or, if he could not hold as his son's agent, then he could hold as mortgagee by descent from his son, and was not estopped to set up the first mortgage. *Comstock* v. *Smith*, 13 Pick. 116. *Blanchard* v. *Brooks*, 12 Pick. 47, 66.

CHAPMAN, C. J. When Brown entered upon the premises for foreclosure, May 2, 1863, his right was subject to the prior right of Benchley under his prior mortgage. As against Benchley he had a mere equity of redemption. Two days later he sold to McIntyre, subject to the same right. When Benchley took possession under the first mortgage, April 26, 1864, he ousted McIntyre of his possession, and by his conveyance the next day to George W. Emerson, all his title and right of possession passed. The defendant might occupy under him so long as he lived. But by the death of George W. Emerson on August 27, 1864, unmarried and without issue, his title would pass to his father, the defendant, subject to the rights of any administrator who may be appointed. Gen. Sts. *c*. 96, § 9.

But the defendant does not claim under an administrator, and it does not appear that one has been appointed. If one should appear, his rights will not be affected by this case. The defendant now sets up a defence of his possession under an agency from his son, George W. Emerson. But this has been terminated by the death of his principal.

McIntyre assigned his second mortgage to the plaintiff on December 25, 1865. This mortgage was a conveyance from the defendant with warranty, and the plaintiff entered and forbade the defendant occupying. The defendant afterwards entered and ploughed up a portion of the premises. As between these parties, the plaintiff's title is perfect, and he had gained possession under it, and the defendant's acts were tortious.

It is contended that McIntyre was disseised at the time of his assignment of his mortgage to the plaintiff, and therefore no title

passed.   But the defendant's possession was that of a mortgagor, who had a right in equity to redeem the second mortgage, and therefore was not adverse.   A mortgagee may always assign his mortgage while his mortgagor is in possession.

It is contended that the defendant may hold against the plaintiff under the first mortgage by descent from his son.   He might do so if his second mortgage did not estop him.   But his covenants in that mortgage are an estoppel against such a claim by him.                                                *Exceptions sustained.*