CHARLES J. BARTLESON *vs.* JOSEPH H. THOMPSON and others.

January 15, 1883.

**Execution Sale—Description of Execution in Certificate.**—A description, in a certificate of sale, of the execution upon which the sale is made, which fairly identifies the execution, is sufficient. A false particular in such description may be disregarded, as in case of deeds and other instruments.

**Foreclosure—Redemption by Judgment Creditor.**—A mortgage of a city lot executed by G., July 30, 1872, was, on March 22, 1876, assigned to D. G. T. in trust for J. H. T. Upon a judgment against G., docketed October 21, 1876, the lot was sold to a bank on July 20, 1878. J. H. T., on July 25, 1879, paid the proper sheriff a sum sufficient to redeem the lot from the sale, and this sum was received by the bank, "in full, for redemption," and a certificate of redemption made to J. H. T. by the sheriff. The lot was sold at foreclosure sale upon the mortgage, on March 28, 1881, to D. G. T., who assigned the certificate of sale to J. H. T. Two judgments against G., one docketed March 28, 1877, the other March 14, 1878, were assigned to plaintiff in January and February, 1882, who has ever since owned the same. *Held,* that plaintiff was not, on March, 1882, entitled, by virtue of these judgments, to redeem from the foreclosure sale.

Plaintiff brought this action of ejectment in the district court for Hennepin county, claiming to be the owner of the premises in controversy, viz., lot 9, in block 56, of Minneapolis. On the trial, before *Shaw,* J., without a jury, the following facts appeared: On July 30, 1872, William Gould was owner of the lot in question,

v.30—11

and on that day mortgaged it to defendant Phelps. On October 21, 1876, a judgment was duly docketed in Hennepin county, in favor of the State National Bank of Minneapolis and against Gould. Subsequently, and on March 28, 1877, and on March 14, 1878, two other judgments were docketed in the same county against Gould, which were duly assigned to plaintiff. On July 20, 1878, the lot was duly sold on execution sale to the State National Bank of Minneapolis under its judgment, and the certificate of sale mentioned in the opinion made and delivered to it by the sheriff making the sale. No redemption from this sale was ever attempted, except, as stated in the opinion, on July 25, 1879, by defendant Joseph H. Thompson. Phelps assigned his mortgage, and it subsequently, and on March 22, 1876, passed to Daniel G. Thompson, who held it in trust for defendant Joseph H. Thompson, and by whom it was, on February 26, 1881, duly foreclosed. On February 25, 1882, plaintiff filed in the office of the register of deeds for Hennepin county notice of his intention to redeem under the above-mentioned judgments, which had been assigned to him, and on March 3, 1882, paid to the sheriff the amount necessary to redeem from the foreclosure. On March 28, 1881, Daniel G. Thompson assigned his certificate of sale on the foreclosure of his mortgage, to defendant Joseph H. Thompson. On these facts the court ordered judgment for defendants, which was entered, and from which plaintiff appeals.

*Robinson & Bartleson,* for appellant.

The certificate of sale to the State National Bank of Minneapolis is void for uncertainty. Freeman on Executions, §§ 312, 329; *Tanner* v. *Stine,* 18 Mo. 580; *Carpenter* v. *King,* 42 Mo. 219; *Wilhite* v. *Wilhite,* 53 Mo. 71.

*Cross, Hicks & Carleton,* for respondents.

BERRY, J.* William Gould, the original source of title, owned the lot in controversy in this action on July 30, 1872, when he mortgaged it to Phelps. By assignments, the mortgage came, on March 22, 1876, to Daniel G. Thompson, who, in fact, held it in trust for defendant, Joseph H. Thompson. February 26, 1881, the lot was sold upon

*Gilfillan, C. J., because of illness, took no part in this case.

foreclosure of the mortgage to Daniel, who, on March 28, 1881, assigned the certificate of sale to Joseph. The State National Bank of Minneapolis, on October 21, 1876, recovered and docketed a judgment against Gould in the Hennepin court of common pleas. On an execution issued upon the judgment the lot was sold to the bank on July 20, 1878.

The statute (Gen. St. 1878, c. 66, § 321,) provides that a certificate of sale shall contain "a description of the execution, judgment, decree, or order under which such sale is made." The description in the certificate issued to the bank is "an execution issued out of and under the seal of the district court of the fourth judicial district, county of Hennepin, and state of Minnesota, upon a judgment duly rendered and docketed in said court and county on the ———— day of ————, in an action therein pending, in which the State National Bank of Minneapolis is plaintiff, and the Minneapolis Lumber Company and William Gould were defendants, * * * to me duly directed and delivered." By Laws 1877, c. 103, the court of common pleas was merged in the district court of Hennepin county; "the possession, custody, and control" of all its records "transferred" to the same. Executions upon its judgments were to be entitled in the district court, and its unsatisfied judgments were in effect *pending* (Gen. St. 1878, c. 66, § 13) in the district court, to be "acted on, disposed of, and accomplished as fully and completely in the said district court as if originally the same therein were." In view of these provisions of the act of 1877, we are of opinion that the execution was sufficiently described to satisfy the statute. Identification is the purpose of the description. The execution is described as one which issued to the sheriff who made the certificate, under the seal of the district court for Hennepin county, upon a judgment docketed therein, in an action therein pending between the parties named. There is no claim or evidence that there is more than one judgment or execution answering this literally true description. It identifies the execution beyond any reasonable doubt. It is true that the judgment was not *rendered* (as the certificate states) in the district court, but this false particular may properly be disregarded, upon the principle

of the familiar rule applicable to deeds and other instruments. *Thorwarth* v. *Armstrong*, 20 Minn. 419, (464,) and citations.

No redemption was made from the execution sale, otherwise than as follows: On July 25, 1879, Joseph H. Thompson paid the sheriff a sum sufficient for redemption. This sum was received by the judgment creditor "in full for redemption," and the sheriff made a certificate of redemption to said Thompson, who thereupon went into possession of the lot. This is the title of defendant, Joseph H. Thompson, under which he and his codefendants claim.

The plaintiff is assignee of two judgments against Gould—one docketed March 28, 1877, and the other March 14, 1878. They were assigned to plaintiff in January and February, 1882. The main question in the case is whether he, as holder of the two judgments, was entitled to redeem (from the foreclosure sale) in March, 1882. Under the statute of redemptions this depends upon whether he was then a creditor having a lien upon the lot. He was a creditor, but he did not have the lien. The effect of the sale under the prior judgment lien of the bank, and of the expiration of the period of redemption without redemption by the judgment debtor, his heirs or assigns, was to divest the title of the judgment debtor, (Gould,) and to cut off all subsequent liens, and among others the liens of the plaintiff's two judgments. It is intimated that Thompson redeemed for Gould, but there is no finding or evidence to that effect. On the contrary, Thompson's so-called redemption took place after the expiration of the year within which Gould was by law permitted to redeem; so that, in the absence of affirmative proof to the contrary, there is no reason for inferring that Thompson redeemed for any one but himself, as in effect owner of the mortgage. So long as it does not appear that the execution sale was annulled (to use the statutory term) by a redemption made by or for Gould, his heirs or assigns, it is immaterial what was the effect of Thompson's so-called redemption. Whether he succeeded in equity or otherwise to the rights of the bank as respected the lot, or whether the bank still retains these rights, we need not inquire. Anyhow, the lien of the plaintiff's judgments upon the lot in controversy was cut off by the failure to redeem there-

under from the execution sale; so that when, in March, 1882, plaintiff, by virtue of his judgments, attempted to redeem from the foreclosure sale, although he was a *creditor* of Gould, he had no lien. His attempted redemption was therefore utterly nugatory.

Judgment affirmed.