MERCHANTS NATIONAL BANK of Fargo, a Corporation, Respondent, v. P. W. MILLER, et al., and BANKERS DISCOUNT ACCEPTANCE CORPORATION, a Corporation, Appellant.

(229 N. W. 357.)

Opinion filed February 18, 1930.

*L. J. Palda, Jr., C. E. Brace,* and *Robert W. Palda,* for appellant.

*Holt, Frame & Nilles,* for respondent.

Burr, J. The trial found that prior to October 19, 1922, the defendant Miller known as the son, owned a half interest in the land involved—the other half being owned by one F. Boesch; that Miller gave a mortgage to the plaintiff, on this interest subject to a first mortgage, both mortgages being recorded; that the first mortgage was assigned to Miller's father, who foreclosed it and bid in the land at the sale; that no redemption was made and sheriff's deed was issued to the father; that the son "went through bankruptcy" by filing his schedules, listing his indebtedness to plaintiff and receiving a discharge; that thereafter about April 16, 1922, the son organized the appellant corporation under the laws of the state of Delaware; that the appellant corporation "was what is commonly termed a 'one-man corporation;' " that the father then sold the land to the son, giving him a deed, with the name of the grantee omitted, and with authority to insert the name of any grantee he saw fit; F. Boesch joined in this deed and conveyed all of his interest in the land involved, the deed being given for the use and benefit of the son; that the son thereafter had one of the directors of the company insert the name of the appellant in the deed as grantee and then delivered the deed to the grantee.

Plaintiff brings this action to foreclose its mortgage, and the Bankers Discount Acceptance Corporation says the mortgage is extinguished. The defendant Miller defaulted and the trial court entered findings of fact, conclusions of law, order of judgment and judgment in favor of the plaintiff and decreed the foreclosure of this mortgage. The Bankers Discount Acceptance Corporation appeals, demanding a trial de novo.

There are fourteen specifications of error, all centering around four of the findings of the trial court and the conclusions of law drawn therefrom.

The appellant says the court was in error in finding; that the father sold the land to the son; that the father gave the son a deed for the use and benefit of the son, with the name of the grantee in blank; that the grantee's name was inserted by an officer of the appellant; and finding that the appellant had notice of any interest of the plaintiff in the land subsequent to the foreclosure of the first mortgage.

Without setting forth the testimony it is sufficient to say the findings of the trial court are fully sustained by the evidence. It is true the son denies that he received such a deed. He says the father and Boesch issued the deed to the appellant, but the testimony of a director of the appellant corporation is full and complete showing that when the deed was presented by the son there was no grantee named therein, that the son said he bought the land from his father and received this deed for his own use and benefit with the name of the grantee omitted, and that at the direction of Miller the director inserted the name of the appellant as grantee and thereafter the deed was delivered. The testimony also shows, almost without dispute, that at the time the deed was delivered by Miller it was agreed he was to receive five hundred shares of stock in the corporation for this land and other lands which he was selling to the corporation; that these lands were all the assets of the corporation at that time; that the stock issued was all of the stock of the company issued at that time, and that four hundred eighty-nine shares of stock were issued to Miller and eleven shares issued to others whom he named for the purpose of enabling him to carry on the corporation. It is clear that the son had the company organized in Delaware, that the resident directors of Delaware immediately thereafterwards resigned and Miller and two others were elected in their place; —in fact that the defendant corporation was merely Miller operating under another name, and the other shares were issued at that time merely to allow him to operate.

Appellant says that in any event plaintiff cannot recover; that there was no redemption from the foreclosure of the first mortgage; that before the defendant went through bankruptcy the lien of the second mortgage was extinguished; that by going through bankruptcy the de-

fendant Miller was discharged from his indebtedness and any liability on his covenants and warranties contained in the mortgage.

The mortgage given to the plaintiff contains the following covenants:

"The said party of the first part (P. W. Miller) does covenant with the said party of the second part, (the plaintiff) its successors and assigns, that he is lawfully seized of said premises; that he has good right to convey the same; that the same are free from all incumbrances, except incumbrances of record, and that he will warrant and defend the title to the same against all lawful claims, hereby relinquishing and conveying all rights in and to the said premises."

The covenants and warranties in this mortgage are independent of each other. They are of "materially different import and directed to different objects." See Bush v. Cooper, 26 Miss. 599, 59 Am. Dec. 270, 273. While the mortgagor did not warrant the land free from incumbrances, nevertheless he agreed with the plaintiff that he would defend his title to the premises against all lawful claims, and therefore he agreed to defend it against the first mortgage. See Smith v. Gaub, 19 N. D. 337, 123 N. W. 827. The covenant of warranty and to defend the title is not restricted by the exception as to the incumbrances. The fact that a restriction was placed on the warranty against incumbrances, does not in any way show the parties intended to restrict and qualify the covenant of warranty to defend.

Appellant criticizes Smith v. Gaub, saying: "We consider the reasoning of the case of Smith v. Gaub, 19 N. D. 337, 123 N. W. 827, relied upon by plaintiff to be indefensible, except as it is strictly limited to the facts in that case, since in that case, the warranty was contained in a deed. And even then, it•is scarcely defensible."

This case was decided in 1910. It has plenty of support in authority, representing, as it does, one line of opinion. Even if this court, as now constituted, was of the opinion the other line of authority should have been adopted this principle has become the established rule of property for this jurisdiction, and should not be disturbed.

Such warranty "to defend the title—against all lawful claims" estops the defendant Miller from asserting any adverse rights in any subsequently acquired title. See Smith v. Gaub, supra; Martin v. Yager, 30 N. D. 577, 153 N. W. 286. Our statute, § 6731 of the Code, says:

"Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

This applies to a case where the mortgagor had title, lost it, and subsequently re-acquired title, as much as it does to a case where the mortgagor did not have title at first, but gave a mortgage and afterwards acquired title.

The son could not assert that the foreclosure of the first mortgage cut off the second mortgage. Subsequently acquiring title to the same land estops him. The law presumes that when repurchased the land he had a good motive in mind; that he purchased it for the purpose of protecting the warranty he had given in this mortgage, and where without such protection the warranty would fail. Consequently the law presumes he was trying to live up to his agreement, and will not permit him to assert a bad motive. "The law, in circumvention of dishonesty will conclusively presume that it was made in the performance of duty, and not in repudiation of it." Brown v. Avery, 119 Mich. 384, 78 N..W. 331.

In Yerkes v. Hadley, 5 Dak. 324, 2 L.R.A. 363, 40 N. W. 340, a married woman executed a mortgage with her husband and therein warranted and agreed to defend the title to the land. There was a prior mortgage which was foreclosed, deed being issued to the mortgagee. The wife thereafter acquired title to the land, but it was held that under the mortgage which she had signed the title which she obtained "inured to the benefit of the mortgagee and as against him she was estopped from setting it up." In the case cited her counsel urged that the lien of the second mortgage was extinguished by the foreclosure; that there was no mortgagor thereafter because the lien was extinguished, and consequently estoppel against a mortgagor could not apply. The court brushed aside all of these points on the theory that in such a case a mortgagor could not claim the first mortgage had been foreclosed cutting out the second. In Sommers v. Wagner, 21 N. D. 531, 131 N. W. 797, a mortgagor purchased a prior mortgage on land the title to which he had warranted and agreed to defend. This court conclusively presumed that he did so for the purpose of protecting the warranty.

In Ayer v. Philadelphia & B. Face Brick Co. 157 Mass. 57, 31 N.

E. 717, it is held: "Where a mortgagor gives a second mortgage with covenants of warranty as against the first mortgage and the first mortgage is foreclosed, and the title obtained by the foreclosure is afterwards conveyed to the mortgagor, his title thereby acquired inures to the benefit of the second mortgagee."

See also Lincoln v. Emerson, 108 Mass. 87, 91.

Appellant contends that even if there be authority for the contention that the exception of mortgages of record from a clause of general warranty does not control other general warranties, nevertheless this is from jurisdictions where the mortgage is "considered an actual conveyance, and not merely as creating a lien as in this state." This contention, however, is set at rest by Smith v. Gaub, 19 N. D. 337, 123 N. W. 827, supra, as well as by Yerkes v. Hadley, 5 Dak. 324, 2 L.R.A. 363, 40 N. W. 340, supra. Counsel for defendant in the latter case specifically raised that question saying "when we consider the status of a mortgage—that is only a lien, divorced from all covenants which pass with the land, and in no sense a transfer—the doctrine of the courts in regard to judgment liens and mortgages without covenants of warranty and sale apply to mortgage under the Code. The doctrine is not, therefore, new, that an outstanding independent title, acquired after the foreclosure and sheriff's deed, does not estop the mortgagor, or inure to the benefit of the mortgagee." The court therefore had this specifically in mind when it held that even in a mortgage which merely creates a lien the mortgagor was estopped by warranties from claiming after acquired title adverse to the mortgagee.

The appellant cites State ex rel. Forest Lake State Bank v. Herman, 36 N. D. 177, 161 N. W. 1017, to show that by the failure, to redeem plaintiff lost whatever lien it had upon the land. Also Bartleson v. Thompson, 30 Minn. 161, 14 N. W. 795; Lowry v. Akers, 50 Minn. 508, 52 N. W. 922; White v. Rathbone, 73 Minn. 236, 75 N. W. 1046, and other cases to the same effect. Some of these deal with judgment and mechanic liens and all are discussing the relative rights of different lien holders. This is not the issue involved. The point is the defendant cannot be permitted to say the lien was extinguished, and therefore as between him and his mortgagee, it is the same as if there never had been a foreclosure. Rauch v. Dech, 116 Pa. 157, 2 Am. St. Rep. 598, 9 Atl. 180, is not in conflict with this view as

it decides merely the effect on the inferior lien of the foreclosure of the superior lien, saying the former is lost. The court recognizes the force of estoppel for it says:

"The court below seemed to think that, because there had been a reacquisition of the mortgaged property by the defendant, the lien of the discharged mortgage had been thereby revived, hence entered judgment on the demurrer for the plaintiff. This was a mistake; a result such as this could only come by way of estoppel."

The court was not considering the effect of warranties or covenants and no reference is made thereto.

The appellant says the defendant Miller went "through bankruptcy" and thus whatever warranties were contained in the mortgages were discharged; therefore there was no indebtedness, no lien, and no warranty.

Speaking of the rights under the covenants appellant says: "We contend that that right was at the very most a contract to give it a lien in case the mortgagor ever became seized of the land again, and the plaintiff had a then present right of action for breach of the covenant."

The trial court found that the defendant Miller not only filed his schedule in bankruptcy but also listed therein indebtedness to the Merchants National Bank, and thereafter received his discharge in bankruptcy. There is nothing in the record which shows any listing of debts or broken covenants, or the filing of any schedules. The record does not show what was done in the bankruptcy proceedings. The only evidence to sustain this finding is the statement of witnesses that Miller "went through bankruptcy." Plaintiff says that as trial de novo was demanded by the appellant this court should pass upon the facts dealing with the bankruptcy, and eliminate all findings as to bankruptcy. Possibly, in the absense of further testimony we may assume that "going through bankruptcy" means taking all the necessary steps though it is a mere conclusion; but we cannot assume that in his schedule of indebtedness defendant listed any provable claim arising from broken covenants contained in the mortgage even if the court did find he "listed therein his indebtedness." Waiving this however and assuming that the bankruptcy proceedings were as extensive, full and complete as appellant assumes, nevertheless it does not affect

the estoppel. There is a distinction between the pecuniary liability which arises from broken covenants and the estoppel by reason of the covenants. As said in Philly v. Sanders, 11 Ohio St. 490, 78 Am. Dec. 316, "the obligation of estoppel became a muniment of title adhering to and transmissible with the land. . . ." As said in Gregory v. Peoples, 80 Va. 355, "A discharge in bankruptcy releases the warrantor from liability for covenants broken, but does not affect the estoppel, because the covenant runs with the land." The court says, at page 357:

"Such a covenant is not only one running with the land, for the breach of which the covenantor is liable in an action for damages, but is something more. By its operation a paramount title, subsequently acquired by him enures to the benefit of the covenantee, and in equity he is estopped from asserting that any outstanding title existed inconsistent with what he undertook to convey. It has therefore been held that a discharge in bankruptcy, while effectual to release the covenantor from liability in an action for a breach of the covenant, does not at all effect the estoppel. This is on the ground that, as the release is by force of the statute, and not by the act of the covenantee, or those claiming under him, no greater effect will be given to it than is warranted by the terms of the statute; and for the further reason that existing personal liability is not necessary to work an estoppel, and consequently there is no necessary connection between the personal liability of the debtor on his covenant and the estoppel which arises therefrom."

In Kezer v. Clifford, 59 N. H. 208, we have a case where a mortgagor, after his discharge in bankruptcy, repurchased the land from one who had bought it at tax sale. The court says:

"The mortgage debt was not paid, nor was the mortgage discharged by the discharge of the defendant in bankruptcy. Although he was thereby relieved from personal liability for the debt, and for damages for breach of his contract generally, which could have been proved against his estate in bankruptcy, he was not freed from the estoppel of the mortgage covenants. Covenants are contracts, but they operate by way of estoppel as well as by way of contract; and the discharge of the bankrupt from personal liability for damages for breach of the contract does not release him from the estoppel which does not depend upon personal liability for damages. The debt is regarded as subsisting, so

far as it is necessary to uphold the mortgage. . . . He is liable for any breach of the covenants in the mortgage arising subsequent to his discharge. . . . And the tax title acquired by him passed to the plaintiff by way of estoppel, by force of the warranty, as if the discharge in bankruptcy had not been granted."

See also Frye v. Bank of Illinois, 11 Ill. 367.

In Hallyburton v. Slagle, 132 N. C. 957, 44 S. E. 657, we have a case where a person after having given a deed to his wife and children, in order to defraud his creditors, went through bankruptcy and subsequent thereto purchased the land from his own assignee in bankruptcy. It was held that though his deed to his wife and children had been given in order to defraud his creditors, yet, when he repurchased the land, he bought with full knowledge of the rights of his wife and children and therefore subsequent improvements which he made on the land at his own expense could not be claimed by him. It is true the deed was given in fraud of creditors, but the court held it "was not material to inquire in the main suit as to the intent of the defendant in procuring title by purchase at the assignee's sale, as the defendant was estopped to take any benefit from the said purchase and the deed of the assignee, and the title thus acquired fed the estoppel created by his deed, without any regard to his intent."

In Bush v. Cooper, 26 Miss. 599, 59 Am. Dec. 270, the defendant had given a deed in trust, or a mortgage, to secure the payment of notes afterwards transferred to the plaintiff. The defendant went through bankruptcy and then purchased this same land at execution sale on a judgment against himself rendered two years before he gave the deed in trust. The plaintiff attempted to foreclose the deed in trust and the defendant set up his bankruptcy discharge and the purchase at execution sale under a superior lien. The court held the bankruptcy discharge did not discharge the lien of the deed of trust, the sale under the judgment did not prevent the plaintiff from asserting his rights under the covenants of warranty under the mortgage or deed of trust, and that defendant's after acquired title inured to the benefit of the plaintiff. True the breach of covenants in this case followed the bankruptcy, but the reasoning of the court shows this had little if any bearing on the case.

The personal discharge in bankruptcy of a covenantor does not free

him from an estoppel arising by law from his prior covenant of warranty of title and against incumbrance in the deed. Bush v. Person, 18 How. 82, 15 L. ed. 273. The court said in this case "not only that no existing personal liability is necessary to work an estoppel, but that none need have existed at any time." Here after bankruptcy the mortgage was cut off by an execution sale on a judgment which was a superior lien, and the mortgagor thereafter purchased the land. Appellant says this case is not in point because "neither lien had been enforced when adjudication" in bankruptcy was made, and because it was determined upon the old bankruptcy law which contained this provision: "That nothing in this Act contained shall be construed to annul, destroy or impair any lawful rights of married women or minors, or any liens, mortgages or other securities on property, real or personal, which may be valid by the laws of the States respectively, and which are not inconsistent with the provisions of the second and fifth sections of this Act," and that no equivalent provision is in the new bankruptcy law. Assuming this claim to be correct, nevertheless the estoppel works independent of any provision in the bankruptcy law. This estoppel would have been good under the old bankruptcy law without the provision relied upon by appellant and therefore any absence of such provision from the new bankruptcy law, if this be a fact, does not in any way affect the principle.

It is the contention of appellant that the doctrine of Bush v. Person, supra, is no longer binding owing to the fact we have a new bankruptcy law, and that the subsequent decisions of the United States Supreme Court such as Fleitas v. Richardson, 147 U. S. 550, 37 L. ed. 276, 13 S. Ct. 495; Stellwager v. Clum, 245 U. S. 605, 62 L. ed. 507, 38 S. Ct. 215; and Security Mortg. Co. v. Powers, 278 U. S. 149, 73 L. ed. 236, 49 S. Ct. 84, 13 Am. Bankr. Rep. (N. S.) 86, indicate a different holding under the bankruptcy law of 1898. An analysis of these cases shows they have nothing in common so far as estoppel under warranties are concerned. They are dealing with provable debts without respect to the question of estoppel. The bankruptcy law of 1898 does not attempt in itself to cancel liens created at least four months prior to the adjudication of bankruptcy. If defendant Miller is not permitted to say the lien does not exist, then he is not permitted to say the bankruptcy act affects rights under that lien any more than it would

affect rights under any other lien. There is nothing in the record which shows the defendant listed any provable claims owed to the plaintiff or claims arising under broken covenants and warranties; but even if he had he is estopped from claiming, so far as subsequent title to the property is concerned, that the property is not affected by his solemn warranty. He is simply not heard on that proposition. If he has any bad motive in mind to relieve himself from any agreements which he is estopped from asserting it would be better for him to say farewell to the land and never again acquire an interest therein. Even if by the listing of provable claims under broken covenants he could relieve himself from money judgment thereon, this does not affect his warranty of title so long as he has title either before or after the warranty is broken.

The bankruptcy law does not discharge mortgage liens and the defendant being estopped from denying he gave this lien, and estopped from showing the lien had been extinguished by a prior foreclosure, and having covenanted "that he will warrant and defend the title against all lawful claims," and our statute providing that after acquired title inures to the benefit of the mortgagee, it is clear Miller could not assert any such defenses against the foreclosure of this mortgage.

The last point urged is that so far as the appellant is concerned its title is good even if defendant Miller be estopped from denying his warranty. This position cannot be maintained for two reasons:

First, the appellant well knew when it took the deed that it was getting the land from the son and not from the father, the grantor named in the deed. The second mortgage was not satisfied of record in the office of the register of deeds of Ward county. There is nothing in this case to show what the state of the record was after the record of the first and second mortgages. There is nothing to show the sheriff's deed to the father was ever recorded and in any event after this second mortgage was on record appellant had notice of the covenants therein contained, and it is not denied but what the appellant corporation knew the P. W. Miller selling the land to it was the mortgagor.

Second, "a purchaser from the mortgagor without actual notice of the second mortgage has no better title than the mortgagor." Ayer v. Philadelphia & B. Face Brick Co. 159 Mass. 84, 34 N. E. 177. Here the court held that title inured to the benefit of the second mortgagee

even though the mortgagor in the interval between foreclosure and acquiring the subsequent title went through bankruptcy.

Rigg v. Cook, 9 Ill. 336, 46 Am. Dec. 462, shows that R. got title, subsequent to foreclosure of a mortgage, by deed from the mortgagor made after the foreclosure, also deeds from others to portions of the lands involved. The mortgagor got patent to the land some seventeen years after the deed was issued on foreclosure. It was held the afteracquired title of R's grantor, the mortgagor, inured to the benefit of the successor of the mortgagee, and those claiming under him. The successor stands in no better position. "What the mortgagor cannot do, those claiming under him cannot do. His grantee will stand in no better position than the mortgagor himself." Washington Loan & T. Co. v. McKenzie, 64 Minn. 273, 66 N. W. 977. See also Frye v. Bank of Illinois, 11 Ill. 367. In addition there is the fact that the appellant company was at that time just Miller himself—merely a "one-man corporation."

It is not claimed that because F. Boesch deeded his interest in the land to defendant Miller, such interest is subjected to the mortgage of plaintiff. The appellant has it. The judgment of the lower court is affirmed with costs.

BURKE, Ch. J., and NUESSLE, BIRDZELL and CHRISTIANSON, JJ., concur.