JOHN PAMPERIN *vs*. MICHAEL SCANLAN.

October 4, 1881.

Foreclosure—Purchase of Certificate of Sale by Second Mortgagee—
    Redemption by Third Lienholder.—A first mortgage on real estate
    having been foreclosed and the premises sold, the holder of a second
    mortgage on the same property, within the year allowed the mortgagor
    in which to redeem, purchased the certificate of sale on the first mort-
    gage, and took an assignment of the same, but did not file any notice of
    intention to redeem, or do any other act or thing by way of redeeming
    from the sale. *Held*, that this purchase of the certificate of sale was not
    a redemption by him as creditor within the statute, and did not relieve
    him from the necessity of a compliance with the requirements of the
    statute regulating redemption by creditors, in order to give him, as against
    subsequent lienholders, the rights of a creditor redemptioner, under the
    statute; that, therefore, the mortgagor having failed to redeem, the holder
    of the third lien on the premises, who had otherwise fully complied with

the requirements of the statute, had a right to redeem by paying simply the amount for which the premises were sold and interest, without paying also the amount of the second mortgage held by the assignee of the certificate of sale.

Appeal by defendant from a judgment of the district court for Fillmore county, *Farmer*, J., presiding.

*Wilson & Gale*, for appellants.

*H. R. Wells*, for respondents.

MITCHELL, J. Action of ejectment. The defendant denies plaintiff's title, and alleges title in himself. The cause was tried by the court without a jury, and the facts found are substantially as follows:

In June, 1876, Ward, Hobart and Kevin, then the owners of the premises, executed a mortgage thereon to Calista F. Sawyer. In December, 1877, Hobart and Ward, then the owners of an undivided half of the premises, executed a mortgage thereon to defendant. In May, 1878, Kevin, then the owner of the other undivided half of the premises, executed a mortgage thereon to one O'Hara, who, on the 14th of May, 1880, assigned to defendant. All of these instruments were duly recorded on or about the dates of their execution. Default having been made in the first or Sawyer mortgage, Mrs. Sawyer foreclosed by advertisement, and bid in the premises at the mortgage sale, July 2, 1879, for $2,217, the amount of the mortgage. On February 14, 1880, Scanlan purchased of Mrs. Sawyer her certificate of sale, and obtained from her an assignment thereof, which was recorded February 18, 1880. The mortgagors never redeemed. Defendant never filed any notice of intention to redeem as mortgagor, nor presented to Mrs. Sawyer any affidavit or other evidence of his right to redeem, and never did redeem, unless purchasing the certificate of sale from Mrs. Sawyer, as aforesaid, amounted to a redemption.

The foregoing facts constitute the basis of defendant's claim of title.

On April 2, 1879, subsequent to the execution of all three of the mortgages already referred to, plaintiff obtained a judgment against Kevin, which, being docketed, became a lien upon the premises in controversy, subsequent to the liens of the prior mortgages. Within

twelve months after the sale of the premises on the Sawyer mortgage, to wit, on the 28th of May, 1880, plaintiff duly filed notice of his intention, as judgment creditor, to redeem the premises from that sale. No redemption having been made by the mortgagors, or their assigns, within the twelve months, the plaintiff, within five days after the expiration of that time, produced to the sheriff of the county the proper evidences of his right to redeem, and paid to him for that purpose $2,466.19, the amount for which the premises were sold on the Sawyer mortgage, with interest and sheriff's fees. The sheriff thereupon executed to him a certificate of redemption, which was duly recorded. These facts constitute the basis of plaintiff's claim of title.

The plaintiff's contention is that, notwithstanding the fact that defendant had purchased Mrs. Sawyer's certificate of sale, yet this did not amount to a redemption; that if he wished to protect his subsequent mortgages on the premises, by virtue of his statutory right of redemption, it was necessary for him to file, within twelve months after sale, notice of his intention to redeem, and after the expiration of that time to redeem as subsequent mortgagee; that having failed to do so, plaintiff became, as it were, senior creditor, and had a right to redeem by paying simply the amount for which the premises were sold and interest. On the other hand, defendant's contention is that he was not bound to redeem, and hence was not required to file any notice of intention to do so; that there was no necessity for his redeeming, and that his relations to the property were such that he was not a redemptioner within the meaning of the statute; that, in order to redeem, it was necessary for plaintiff, under the statute, to pay not only the amount for which the premises were sold, but also the amount of the two subsequent mortgages held by defendant, which were liens on the premises prior to that of plaintiff's judgment; and that therefore plaintiff's attempted redemption was insufficient and void.

The question here presented for our decision calls for a construction of our statute regulating the redemption of mortgaged premises after foreclosure sale. The provisions of this statute are so very imperfect, and in some respects so very obscure, that the task of construing them is one of great difficulty. Indeed, we do not think it possible to place a construction upon some of the provisions of this

statute that will not be subject to grave objections, and result in some serious practical difficulties. When called upon to construe so imperfect a statute, the best course for a court to pursue is to consider its general aim or purpose, and the plan adopted to carry that purpose into effect, and then adopt the construction that will in practice most nearly accomplish the object intended. And, first, it may be remarked that, while it is to be presumed that in framing this statute the analogies of former equity rules on the subject of the right of redemption would to a certain extent be followed, yet this right of redemption after foreclosure sale is purely a creature of statute, and therefore, if a party would avail himself of this right, he must follow the statute strictly and bring himself fully within its provisions. Again, the right of redemption given to lien creditors does not commence till after the mortgagor's right of redemption has terminated, and the title of the holder of the certificate of sale has become, as against the mortgagor, perfect and absolute. Gen. St. 1878, c. 81, § 16.

The end or aim had in view in the provisions of this section 16, giving lien creditors the right of redemption in case the mortgagor fails to redeem, was, in our opinion, to make the land bring its utmost value, by means of what might be termed an auction sale among creditors, preserving to each his right according to the seniority of his lien. The aim is to conduct this sale for the benefit of both the creditors and the debtors, the creditors being interested in realizing out of the property as much as possible towards payment of their claims, and the debtor being interested in having as much as possible of his debts paid out of it. The mode of conducting this sale, so far as it has been plainly prescribed by the statute, must be followed whether it be reasonable or unreasonable, unless the parties who have the right to insist upon performance choose to dispense with it. When the statute is doubtful, that construction should be adopted which will protect the interests of the mortgagor, and secure the rights of all the creditors according to the seniority of their liens, and keep up the auction until the best price has been obtained. *People* v. *Fleming*, 4 Denio, 137. The statute provides that this competitive sale among creditors, under the form of successive redemptions,

shall be conducted as follows: *First*, all bidders or proposed redemptioners must register by filing notice of their intention to redeem within one year after the sale; *second*, they must present to the party from whom they redeem evidence of their right to do so, and an affidavit showing the amount claimed as due on the lien under which they claim the right of redemption; *third*, a certificate of redemption must be made and recorded within ten days, which shall, among other things, state the amount paid by the redemptioner, upon what claim the redemption was made, and, if a lien, the amount claimed to be due thereon. These provisions are designed not merely for the information of the party from whom the redemption is made, but also, and perhaps mainly, for the information and security of every creditor having a lien, and who may desire to redeem. The object is to inform them who their competitors will be, when their time for redemption will begin and end, and how much they will be called on to pay in order to redeem. *People* v. *Ransom*, 4 Denio, 145; *Williams* v. *Lash*, 8 Minn. 441 (496;) *Tinkcom* v. *Lewis*, 21 Minn. 132.

It is plausibly, and not without force, urged that other creditors have no interest in these papers; that the law makes no provision for filing or recording them, or even leaving them with the sheriff or the party from whom the redemption is made; and, even if left with them, they are neither bound to preserve them nor to exhibit them to any other creditor; and that the certificate of redemption might not be recorded until after a creditor's right of redemption had expired, and hence that its contents would be of no benefit to him. We recognize the force of these objections. They illustrate forcibly the very imperfect character of this statute in not sufficiently guarding the rights of third parties. But it cannot be doubted, however imperfectly the authors of this statute have provided for carrying their purpose into effect, that their intention, in part, at least, was to secure the rights of creditors by the provisions referred to. This is especially true in reference to the requirements that notice of intention to redeem must be filed, and that the affidavit, as well as the certificate of redemption, shall state the amount claimed to be due on the lien under which the redemption is made. If these things were designed for the benefit of other lien creditors, then it follows that a

substantial compliance with them is necessary in order to give a party any rights under the statute as against such creditor. *People* v. *Ransom, supra,* and *Lloyd* v. *Karnes,* 45 Ill. 62.

We are of opinion, therefore, that the mere purchase of the certificate of sale by defendant from Mrs. Sawyer did not operate as a redemption within the meaning of the statute. *Lloyd* v. *Karnes, supra.* Neither did the fact of such purchase relieve him from the necessity of a compliance with the requirements of the statute, if he designed to avail himself of his rights under it as a creditor, in order to protect his subsequent liens. The phraseology of section 16 does not favor defendant's theory, but on the contrary, we think, favors the construction we have suggested. The senior creditor there referred to clearly means the senior creditor who redeems. He can redeem by paying simply the amount for which the property was ·sold, and interest. It is only the subsequent or successive redemptioners who are required to pay, in addition to this, all liens prior to their own held by the party from whom the redemption is made. The liens here referred to, in view of other provisions of the statute, seem to be those under which such prior redemptioner claimed the right to redeem, and which he was required to set forth by affidavit at the time of redemption. In the present case, defendant having failed to redeem, the plaintiff, if our theory be correct, stepped into his shoes and became "senior" creditor, and therefore had a right to redeem by paying simply the amount for which the property was sold, and interest. This he did, and, under the statute, such a redemption operated as an assignment of the right of the holder of the certificate of sale, and, no other creditor having subsequently redeemed from him, his title became absolute.

It is strenuously urged that this construction of the statute tends to the very absurd conclusion that a man must redeem from himself, and must present his own affidavit and other evidences of his right to redeem to himself, and pay out money with one hand which he can immediately take up with the other. We admit that there is some force in these suggestions, and that it is contrary to our ideas of such things to require a man to redeem when no one else has a lien on the premises paramount to his own. But if we are correct in our opin-

ion that the theory and aim of the statute giving creditors successively the right of redemption is to make the property bring the highest price by a sort of auction sale among creditors, and the conditions which are required of redemptioners are designed for the information and security of other creditors, then we think the objections above referred to are more plausible than real. Nor do we think our construction of the statute goes to the extent of holding that it would have been necessary in this case for defendant to actually pay out any money in order to protect his rights as a lien-creditor. As assignee of the certificate of sale he was entitled himself to the redemption money, and, if he laid it down, he could immediately take it up again, and the law requires no idle ceremony.

If defendant had complied with the other requirements of the law we apprehend that it would have sufficed, (see *Ex parte Newell,* 4 Hill, 608,) and inasmuch as he already held an assignment of the certificate of sale, it may be that there would have been no necessity for the execution of a certificate of redemption. But it is not necessary to decide this. However that may be, we think it was at least necessary for him to file notice of his intention to redeem, and make the required affidavit, etc., as to the lien under which he claimed the right of redemption, and the amount claimed due thereon, and to have preserved it or lodged it with the sheriff, to be exhibited if occasion required. If it be correct that these documents are designed for the benefit of other creditors, this does away with the suggested absurdity of requiring a man to present them to himself, for the objection made rests upon the hypothesis that these documents were designed solely for the benefit of the person from whom the redemption is made; and if the question is asked, what is to be done with these papers, and where are they to be deposited? it is sufficient to reply that the same difficulty would arise in the case of any statutory redemptions. The difficulty is in the very imperfect character of the statute itself.

Our conclusion, therefore, is that the plaintiff had a right to redeem by paying simply the amount for which the premises were sold and interest, without paying defendant's other liens; that defendant's purchase of the certificate of sale was not of itself a redemption; and

that such purchase did not relieve defendant from the necessity of·
·complying with the substantial requirements of the statute, if he·
desired to avail himself of his right of redemption under it, for the·
purpose of protecting his other liens on the premises.

Judgment affirmed.