CHARLES GODDARD PARKE *vs.* VALENTINE G. HUSH.

October 17, 1882.

**Judgment Sale—Redemption by Subsequent Encumbrancer—Intervening Creditors.**—Rule in *Pamperin v. Scanlan*, 28 Minn. 345, that a creditor redeeming need not pay liens held by the purchaser at an execution or mortgage sale subsequent to that on which the sale was had, and prior to that under which he redeems, if such purchaser has not, with respect to such subsequent liens, placed himself in the line of redemption by complying with the statute, followed and applied.

Action to quiet title to certain vacant and unoccupied land in Hennepin county. Plaintiff's title rested upon a purchase at an execution sale. Defendant claimed title through redemption from this sale, under Gen. St. 1878, c. 66, § 323, as a subsequent creditor.

The action was tried in the district court for Hennepin county, by *Young, J.*, without a jury, and judgment was entered for defendant, from which plaintiff appeals. The case is stated in the opinion.

*Geo. R. Robinson*, for appellant.

*F. Hooker*, for respondent, cited, *Pamperin v. Scanlan*, 28 Minn. 345; *McLagan v. Brown*, 11 Ill. 519; *Merry v. Bostwick*, 13 Ill. 398; *Watson v. Reissig*, 24 Ill. 281; *Hall v. Jones*, 21 Md. 439; *Chautauque Co. Bank v. Risley*, 19 N. Y. 369.

GILFILLAN, C. J. From February 1, 1878, to May 7, 1878, R. J. Baldwin owned the land in controversy. Judgments were entered and docketed against him in the following order: February 7, 1878, one in favor of Mary B. Brown; February 8, 1878, one in favor of John B. Hanscom; and February 21, 1878, one in favor of defendant. February 18, 1878, executions on the first two judgments were issued. That on the first judgment misstated the amount of it, but as it described it accurately in all other respects, that mistake did not vitiate it. May 7, 1878, the real estate was sold under both of these judgments and executions, this plaintiff becoming the purchaser. May 7, 1879, defendant duly filed notice of his intention to redeem from the sale under the first judgment, and May 12, 1879, made application to the clerk of the district court to make such re-

demption, presented to him the proper proofs, paid him the amount of the plaintiff's bid on the sale under the first judgment, with interest and costs, and took the clerk's receipt therefor. The statement of facts found does not show under which judgment the property was first sold, nor is it material.

The court below held that defendant is the owner under the sale upon the judgment first in date, and his redemption therefrom, upon the ground, evidently,—following *Dickinson* v. *Kinney,* 5 Minn. 332, 409,—that the sale under that judgment passed at once to the purchaser all the estate of the judgment debtor in the land, so that nothing could pass by the sale under the second judgment.

The correctness of the decision in *Dickinson* v. *Kinney* may be doubted, even under the statute as it then stood, and the statute has since been changed, so that the decision is inapplicable. The clause in Pub. St. *c.* 61, § 116, providing that, upon redemption by the owner, the sale is terminated "and he is restored to his estate," on which the court laid great stress, has been omitted, and the provisions of Gen. St. 1878, *c.* 66, § 322, inserted. These provisions are to the effect that the certificate of sale shall, at the expiration of the time for redemption, pass all the right, title and interest of the person whose property is sold, thus postponing the passing of the title until that time, and in that respect placing execution sales on the same footing as foreclosure sales. *Daniels* v. *Smith,* 4 Minn. 117, (172;) *Donnelly* v. *Simonton,* 7 Minn. 110, (167;) *Horton* v. *Maffitt,* 14 Minn. 289. It follows that, pending the time for redemption by the owner from sale under a first judgment, there is in him an interest which may be sold under a second judgment.

Whether in this case the sale under the second judgment was prior or subsequent to that under the first, the right under it was subject to the right created by the sale under the first. The judgment could not be sustained on the ground on which the court below rendered it; but it may on the ground that the rights of the plaintiff under the sale upon the first judgment passed to defendant upon his redemption, and, there being no redemption under the second judgment, or under the sale upon it, the rights thereunder were defeated. Unless there is something to distinguish the case from *Pamperin* v. *Scanlan,*

28 Minn. 345, the defendant could, under his judgment lien, redeem from the sale under the first judgment, without paying the amount bid by plaintiff upon the sale under the second judgment.

There is some difference between the provisions of the statute regulating redemptions from execution sales and those of the statute regulating redemptions from foreclosure sales. The former statute provides (Gen. St. 1878, c. 66, § 324,) that the judgment debtor, his heirs or assigns, may redeem by paying to the purchaser the amount of his bid, with interest, "and if the purchaser is a creditor *having a prior* lien, the amount thereof, with interest." The words we have quoted are not in the other statute. Gen. St. 1878, c. 81, § 13. It is clear, in each statute, that the first redeeming creditor may redeem by paying what must be paid by the judgment debtor in the one case, and the mortgagor in the other. Gen. St. 1878, c. 66, § 324; c. 81, § 16. It is equally clear in this case that while the judgment debtor's right of redemption from the sale under the first judgment existed, he could make it by paying the amount bid on that sale, with interest. For although, in respect to the amount of his bid at the sale under the second judgment, the purchaser would doubtless be regarded as a creditor having a lien, within the meaning of the statute regulating redemptions, he certainly was not in respect to that a creditor having a prior lien; that is, a lien prior to that on which the sale was had. The lien being subsequent to that on which the sale was had, the plaintiff stood in respect to it in the position of the defendant in *Pamperin* v. *Scanlan*; and, under the rule applied in that case, it was necessary, in order to tack the amount bid at the sale under the second judgment to the amount bid at the sale under the first, so that a subsequent lienholder would have to pay both amounts to redeem under the latter, that he should comply with the statute as a redemptioner.

Judgment affirmed.

MITCHELL, J., *dissenting.* I am unable to concur with my brethren in the conclusion arrived at by them in this case. I think that the defendant, as a redemptioner under his judgment lien, was required to pay the amount bid by plaintiff on *both* execution sales. Our stat-

utes governing redemptions from execution and mortgage sales are exceedingly defective. In certain cases a purchaser at such sales might use another lien held by him as a club to deter other creditors from redeeming, and thus get the property for the amount of his bid, and still hold the debt secured by such other lien as an unsatisfied personal demand against his debtor. The statute makes no provision for giving notice to subsequent redemptioners of liens held or acquired by a purchaser or prior redemptioner, other than the one under which the latter had purchased or redeemed. I think this court was perhaps influenced by a consideration of these defects or omissions to give an erroneous construction to the statute in the case of *Pamperin* v. *Scanlan,* which my brethren think controls this case. I never felt entirely confident that the decision in that case was correct. Subsequent reflection only increased my doubts, and my investigation of the present case has convinced me that it was erroneous. My reasons for this change of views are briefly these:

The statute itself will not admit of the construction put upon it in that case. So far as concerns the question now under consideration, the statute regulating redemptions from mortgage sales, and that regulating redemptions from execution sales, are in substance the same. Gen. St. 1878, c. 66, § 324, reads: "If no such redemption [that is, by the judgment debtor, his heirs or assigns,] is made, the senior creditor may redeem within five days after the expiration of said year, and each subsequent creditor within five days after the time allowed all prior lienholders as aforesaid, by paying the amount aforesaid, [that is, the amount required to be paid by the judgment debtor,] "*and all liens prior to his own held by the party from whom such redemption is made.*" I think that the provision (and the whole of it) as to what a creditor must pay in order to redeem, applies to *all* creditors—the *senior* as well as subsequent creditors; that the statute means just what it says; that *any* creditor, be he the senior or a subsequent one, must, in order to redeem, pay *all* liens prior to his own held by the party from whom the redemption is made. Hence, I think the suggestions made in *Pamperin* v. *Scanlan*, (p. 350,) that the senior creditor "can redeem by paying simply the amount for which the property was sold

and interest," and that "it is only the subsequent or successive redemptioners who are required to pay, in addition to this, all liens prior to their own held by the party from whom the redemption is made," are mere interpolations, for which there is no warrant in the text of the statute. The language of the statute will not admit of any such construction.

A consideration of the object of giving a party the right to redeem, and of the rules governing the equity of redemption as it existed independent of statute, confirm the views here contended for. The object of giving the right to redeem is to enable a party having an interest in the property to remove an encumbrance prior to his own, and thus make his own interest beneficial. Hence it was only those who had a subsequent or subordinate interest in the property who had the equity of redemption, and it was only from encumbrances prior to his own, and which might cut out his own, that a party could redeem. A person could not redeem from an encumbrance subsequent to his own, because it could never prejudice him; and the act of a man's redeeming from himself was unheard of, because a senseless and useless act. Moreover, the rule of equity which required a party who filled a bill to redeem, to pay *all liens prior to his own*, held by the party from whom he sought to redeem, is a familiar one. Now, while the right of redemption after sale is a purely statutory right, which depends wholly upon the statute, yet it is to be presumed that the law-makers, in framing the statute, understood and had in mind these familiar principles, and designed, as far as circumstances would permit, to follow the analogies of existing rules governing the equity of redemption; and in requiring a creditor who redeemed "to pay all liens prior to his own, held by the party from whom the redemption is made," I think they had in mind the rule of equity referred to. There was an additional reason, too, why a creditor who redeemed should, under the statute, be required to pay all liens prior to his own, held by the party from whom he redeemed. Such a redemption does not annul the sale, but operates as an assignment to the redemptioner of the right acquired under such sale. Hence, if not paid at the time of redemption, all these liens would be entirely cut off.

An examination of the history of a similar statute in the state of California, and of the decisions of the courts of that state, under it, tends very strongly to support the construction of our own statute now contended for. *Vandyke* v. *Herman*, 3 Cal. 295; *Knight* v. *Fair*, 9 Cal. 117; *Sharp* v. *Miller*, 47 Cal. 82.

It may be suggested that the decision in *Pamperin* v. *Scanlan* has become a law of property, and therefore, even if erroneous, should stand. There is some force in this suggestion, and generally such a consideration should be controlling. But I am satisfied that the doctrine laid down in that case will work mischievously, and will, in many cases, as in the present case, make the statute a puerile absurdity; for if there be any reason why the plaintiff, who purchased at the execution sales on both the first and second judgments, was required to redeem from himself, on the sale under the execution on the first judgment, in order to prevent his interest acquired under the other execution sale from being cut off by a redemption by defendent under a third judgment, I have failed to discover it. What benefit could such an idle act be to anybody? The decision in *Pamperin* v. *Scanlan* has been so recently rendered that it is not probable that it has been followed to any great extent as a rule of property. But such a decision is necessarily retroactive, and applies to redemptions made before, as well as those made since, it was made. Therefore, the evils to result from allowing it to stand will probably be greater than those that will follow from its being overruled. My judgment is that it should be promptly overruled. It can work no hardship to defendant, because his attempted redemption was made before the decision of that case, and hence he cannot urge that he was misled by it.