## Thomas Lowry vs. John M. Akers et al.

Argued June 21, 1892. Decided July 15, 1892.

**Rights of Creditors to Redeem.**

A foreclosure sale was had January 11, 1890. The land was sold January 23d under execution upon a judgment subsequent to the mortgage. There were several judgment liens subsequent to that on which the execution sale was had. The purchaser at the execution sale, and the respective holders of these judgments, filed each timely notice of intention to redeem from the foreclosure. No notice of intention to redeem from the execution sale was filed. The purchaser at the execution sale redeemed in time from the foreclosure sale. The holder of the first subsequent judgment redeemed from that sale in time, and within a year from the execution sale. The holder of the second subsequent judgment, within the time for him to redeem from the foreclosure sale, but after a year from the execution sale, attempted redemption from the former sale. *Held*, that his lien had been cut off by the execution sale, so that he had no right to redeem from the prior sale.

**Sale on Second Lien Cuts Off Subsequent Liens.**

The sale on a second lien, whether made before or after that on a first lien, has the effect, unless it is itself cut off by the first sale, or unless it is redeemed from, to cut off all liens and interests subject to it.

**Redemption by Creditor—Lien not Merged.**

While there are still rights of redemption outstanding, the lien upon which a redemption is made is not merged and extinguished in the title of the purchaser at the sale redeemed from, but it passes by subrogation to any subsequent redemptioner.

**Merger—Value of Property.**

The lien on which a redemption is made is not extinguished by the fact that the value of the property is equal to the amount of the lien with the amount paid for redemption added.

Appeal by defendant, John M. Akers, from a judgment of the District Court of Hennepin County, *Lochren*, J., entered February 12, 1892.

On August 12, 1876, Fredrick G. Mayo was the owner of the Southeast quarter of Section twenty five, (25,) Township 30, Range

24, in Anoka County. On that day he made a mortgage thereon to the Windham County Savings Bank to secure the payment of the sum of $1,500. This mortgage was recorded, and afterwards assigned to Thomas Lowry. On October 25, 1878, Mayo made another mortgage on the same land to E. F. Rollins, to secure the payment of the sum of $2,000, which mortgage was recorded October 28, 1878, and on March 8, 1880, assigned to Thomas Lowry. Tenny, Aldrich & Co. recovered a judgment against Mayo in the District Court, Hennepin County, for $524.77, a transcript of which was docketed in Anoka County, March 9, 1880, the judgment becoming a lien on the north half of said land, the south half being claimed by Mayo as his homestead. February 21, 1882, Charles D. Lougee recovered a judgment against Mayo for $1,250.57 in the District Court, Hennepin County, and a transcript was docketed in Anoka County, June 11, 1883. This judgment was, on September 15, 1890, assigned to Thomas Lowry. On December 27, 1884, Elias E. Post recovered a judgment against Mayo for $167.04 in the District Court for Hennepin County, and a transcript was docketed in Anoka County January 2, 1885. This judgment was assigned to John M. Akers, December 30, 1889.

On January 11, 1890, a foreclosure sale of the land was made under the Windham County Bank mortgage, Lowry becoming the purchaser for the sum of $2,323.20. On January 23, 1890, the north half of the land was sold, upon an execution on the Tenny, Aldrich & Co. judgment, to M. B. Koon, for $955.37. On January 10, 1891, Lowry, Koon and Akers, as creditors having liens under the Rollins mortgage, the execution sale, the Lougee judgment, and the Post judgment, respectively, each filed notice of intention to redeem from the foreclosure sale under the Windham County Bank mortgage. On January 15, 1891, Lowry, as a creditor having a lien under the Rollins mortgage, redeemed from the mortgage sale to himself under the bank mortgage. On January 19, 1891, Koon, as a creditor having a lien under the execution sale, redeemed from the mortgage sale. On January 23, 1891, Lowry, as a creditor having a lien under the Lougee judgment, redeemed again from the mortgage sale. On January 28, 1891, Akers, as a creditor having a lien

under the Post judgment, redeemed or attempted to redeem from the foreclosure sale, paid the sheriff the sum of $9,655.60, the amount paid on the foreclosure sale with the above liens added, and received a certificate of redemption which was duly recorded. No notice of intention to redeem from the execution sale of January 23, 1890, to Koon under the Tenny, Aldrich & Co. judgment was ever filed by Akers or any of the lien creditors, and no redemption was ever attempted to be made from this sale. It will be noticed that Akers' pretended redemption from the foreclosure sale was made five days after the time for redemption from the execution sale expired.

This action was commenced in Anoka County to set aside the redemption made by Akers, and to quiet Lowry's title to the land. The action was transferred to Hennepin County and tried November 11 and 12, 1891. Findings were filed December 4, 1891, and judgment entered thereon in favor of the plaintiff, February 12, 1892, setting aside Akers' redemption, and establishing the title in Lowry. From this judgment the defendant John M. Akers appealed to this court.

The title to the land involved in this case has been before the court in three previous cases. In *Lowry* v. *Mayo*, 41 Minn. 388, it was held that Lowry acquired no title to the land through a purchase from Winthrop Young, the purchaser under a mortgage sale that was invalid. In *Stuart* v. *Lowry*, 42 Minn. 473, Lowry claimed that he was induced to purchase from Young, by Mayo, the owner, and that Mayo's title passed to him by estoppel. This court held the evidence insufficient to establish an estoppel. See, also, *Stewart* v. *Lowry*, 49 Minn. 91. On the trial of this case in the District Court, respondent attempted to establish a title to the land in himself through estoppel, irrespective of his redemption, and claimed that a tender made by him, as the holder of such title, to Akers, of the amount of the Post judgment, extinguished the lien of that judgment. In this position respondent was upheld by the trial court.

*E. E. Cooley* and *W. E. Akers*, for appellant.

It was unnecessary to file notice of intention to redeem from the execution sale to Koon made January 23, 1890. Koon on January

19, 1891, under his lien acquired at this sale, redeemed from the prior foreclosure sale. By this redemption, his claim was satisfied and his lien extinguished and merged in the title he acquired by his redemption. This sale was now out of the way, and there could be no effectual redemption from it. Then why file a notice to redeem? *Bartleson* v. *Thompson*, 30 Minn. 161, differs materially from the case at bar. There the sale under the second lien was made before that under the first lien, and it was held that Bartleson, the holder of the third lien, had lost his right of redemption from the same under the first lien by failing to redeem from the first sale under the second lien. *Abraham* v. *Holloway*, 41 Minn. 156, is another such case. But in the case at bar, the sale under the first lien was made before that to Koon under the second lien, and Koon having redeemed from the first sale, and having himself been redeemed from, his claim was paid and extinguished, his lien gone, and the sale out of the way, so that a redemption therefrom by a subsequent lienholder would be ineffectual. *Parke* v. *Hush*, 29 Minn. 434; *Buchanan* v. *Reed*, 44 Minn. 172; *Sprague* v. *Martin*, 29 Minn. 226; *Pamperin* v. *Scanlan*, 28 Minn. 345.

*Koon, Whelan & Bennett*, for respondent.

At the time of Akers' attempted redemption from the foreclosure sale, he had no lien upon any portion of the land and therefore no right of redemption. 1878 G. S. ch. 81, § 16. It is not sufficient that he had a lien at the time of filing notice of intention to redeem. His right to redeem is lost if his lien is paid, extinguished, or cut off, before the time of actually making redemption. *Cuilerier* v. *Brunelle*, 37 Minn. 71; *Bartleson* v. *Thompson*, 30 Minn. 161; *Atwater* v. *Manchester Savings Bank*, 45 Minn. 341.

The execution sale to Koon, unless redeemed from or extinguished, operated to cut off all subsequent liens, including that of Akers. Akers made no attempt to redeem from the sale to Koon. The lien of Koon under the execution sale was not extinguished by his redemption on that lien from the prior mortgage sale, nor by the subsequent redemption by Lowry from him. His lien still existed, transferred to Lowry, and Akers, not having redeemed from the

sale, lost his lien, and with it his right to redeem from the fore-closure sale.

GILFILLAN, C. J.    The situation, so far as necessary to state it. for the decision of this case, is, Mayo was the owner of the land con-sisting of a quarter section.    There were liens upon it in the follow-ing order as to priority:    (1) A mortgage in favor of the Windham County Savings Bank, assigned to Lowry; (2) a mortgage in favor of Rollins, assigned to Lowry; (3) a judgment in favor of Tenney, Aldrich & Co., which was a lien on the north one-half of the quarter; (4) a judgment in favor of Lougee, a lien on said north one-half, as-signed to Lowry; (5) a judgment in favor of Post, a lien on said north one-half, assigned to Akers.

The bank mortgage was foreclosed, under the power of sale, by a. sale January 11, 1890, Lowry being the purchaser.

The north one-half of the quarter was sold January 23, 1890, un-der an execution upon the Tenney, Aldrich & Co. judgment, Koon being the purchaser.

January 10, 1891, notices of intention to redeem from the fore-closure sale were filed as follows:    One by Lowry under the Rollins mortgage, and one by him under the Lougee judgment; one by Koon, as a creditor under the execution sale to him, and one by Akers un-der the Post judgment.

No notice of intention to redeem from the execution sale was filed.

It will be observed that, unless redeemed from, the sales would be-come absolute,—the mortgage sale, January 11, 1891; the execution sale, January 23, 1891,—and that, if the execution sale became ab-solute, its effect was to cut off all liens subject to the judgment on the north one-half of the quarter.

January 15, 1891, Lowry redeemed under the Rollins mortgage from the foreclosure sale.

January 19, 1891, Koon redeemed as a creditor having a lien un-der the execution sale to him.

January 23d, Lowry redeemed under the Lougee judgment.

January 28th, Akers redeemed, or attempted to redeem, under the Post judgment.

No attempt was made by any one to redeem from the execution sale.

It will be observed that Lowry redeemed under the Lougee judgment before its lien was in any way affected by the execution sale, and while it was in full life, and he had the right to redeem under it, and also that Akers' redemption was not made till the execution sale had become absolute, unless its becoming absolute had been in some way arrested.

The question, then, is, did it become absolute so as to cut off liens subsequent to the judgment? In *Parke* v. *Hush*, 29 Minn. 434, (13 N. W. Rep. 668,) the question whether the sale under the judgment second in priority cut off the lien of a third judgment, so that the owner of it could not redeem from a sale under the first judgment, was not presented nor passed upon. The only question really decided was whether, the plaintiff, the purchaser upon the sales under the first and second judgments, having failed to put himself in the line of redemptioners from the sale upon the first judgment by filing notice of intention to redeem under the sale upon the second judgment, the defendant could make redemption upon the third judgment without paying also the amount of the second judgment. The question as to the effect of a sale upon the lien second in priority was presented in *Bartleson* v. *Thompson*, 30 Minn. 161, (14 N. W. Rep. 795,) and it was held that a sale not redeemed from upon a second lien cut off all subsequent liens, so that the holders of them could not redeem from a sale under the first lien. In that case the sale under the second lien was prior to that under the first.

We cannot see that the time of the sale under the second lien, whether before or after that on the first, makes any difference with its operation and effect. After the sale on the first, and while the owner's right to redeem exists, he has still an interest in the land sufficient to sustain a sale upon a subsequent lien, and the operation and effect of such sale, until the lien of it is cut off by the first sale, are the same as though made before that on the first. Whether made before or after that on the first, the holders of liens subsequent to that on which it is made must protect their liens in the manner prescribed in the statute by redeeming from it. They are not re-

lieved from that necessity by the fact that there has been a prior sale, from which the purchaser at the later sale must protect himself.

But defendants urge that Koon's lien under the execution sale was extinguished either upon his making redemption or upon Lowry's redemption under the Lougee judgment. No reason is suggested why or how such extinction was brought about, except that it was by merger of the lien in the purchaser's title under the foreclosure sale, or by satisfaction, because the property was worth more than enough to pay his lien with what he had paid to make redemption added.

At the common law, the strict rule is, that, when an inferior and a superior title meet in the same person, the inferior is merged in the superior; and that rule might apply at law when the foreclosure title should be absolutely vested in one person by expiration of all subsequent rights of redemption. In equity, the rule is not favored, and it is held that whether there is a merger or not will depend on the party's intention when he acquired the last title, and that he is presumed to intend to hold the titles separate and without merger, when it may be for his interest to do so. A not infrequent example of this is where a person holding an inferior title or lien takes in a superior title. Equity will permit him to rely on both, or to rely on each to strengthen the other. But in the case of redemptions under the statute the intention of the party does not enter into account. The question is: What does the statute intend shall be the effect of the redemption on the lien under which it is made, during what may be termed the transition stage of the title; that is, while other rights of redemption are outstanding, and no one has a perfect and absolute title? Does it intend that, as each successive redemption is made, the lien under which it is made is to be merged and extinguished in the interest acquired by the purchaser at the sale, so that when, say, the tenth redemptioner has made his redemption, and holds his interest subject to the right of subsequent redemptioners, his interest or lien or inchoate title is just what was acquired by the purchaser and no more? Or is the theory of the statute that of successive subrogations, so that the first redemptioner is subrogated to the right of the purchaser, the second to the right of the purchaser with the lien

of the first redemptioner added, and so on, as each successive redemption is made? The latter is most consistent with the provisions of the statute regulating redemptions and the rights of successive redemptioners, and certainly is most consistent with equity. On the theory of extinction, the last redemptioner gets nothing if the foreclosure turns out to be invalid; on that of subrogation, he acquires all intervening redemption liens, and may enforce them against the land for his protection and reimbursement. Suppose a mortgage foreclosure, the mortgage being valid, but the foreclosure invalid, say, for the reason that notice to the party in possession was not served as required by statute, could there be a doubt that the last redemptioner would be subrogated to the mortgage lien, to the extent, at least, of the price bid at the foreclosure sale, and that he could have it enforced against the land for his benefit, for that amount, or that the liens taken up by him on his redemption would be regarded as still liens, to which he had been subrogated, and which he may enforce?

We think, then, that a lien on which redemption is made is not thereby merged and extinguished, but that it survives, so far as may be necessary to the protection of the party redeeming, or of any one redeeming from him, and passes for that purpose by subrogation to subsequent redemptioners.

The claim that Koon's lien under the execution sale was extinguished by satisfaction is made upon the decision of *Sprague* v. *Martin*, 29 Minn. 226, (13 N. W. Rep. 34.) It was there decided that where, upon a redemption, the property is of value greater than the amount the redemptioner paid to make it, the excess is to be applied upon the debt secured by his lien, and that in any attempt to enforce the debt against other property it is to be deemed paid *pro tanto*. But that case did not decide, and the question was not before the court for decision, what effect an excess in value of the property above what the redemptioner paid to make redemption has on the lien under which it was made. The lien is the basis of his right to redeem, and it would seem inconsistent to say that in the act of making redemption he destroys the lien. In strict foreclosure, or foreclosure by entry, where those modes are permitted, the value of

the land is applied upon the debt whenever the party seeks in any other manner to enforce it; but we do not think a court was ever asked to apply it for the purpose of extinguishing the foreclosure lien which supports the title got by the foreclosure.

But this claim is covered by the holding that each redemptioner succeeds by subrogation to all prior liens on which redemption was made, for there could be no subrogation to a lien if it were extinguished by the operation of redeeming upon it.

Lowry succeeded to the lien of Koon just as it was, with all the incidents pertaining to it, a lien upon a sale ripening into absolute title as against all liens and interests subject to the judgment upon which the sale was made, and which, if the sale was not redeemed from, would cut off all such liens and interests. Among these stood the Post judgment. The lien of that judgment having been cut off by the execution sale, the attempt by Akers to redeem on January 28th was abortive.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 922.)

An application for a reargument was denied on October 4, 1892.