JOHN TOMASKO v. I. F. COTTON AND ANOTHER.
MARQUETTE NATIONAL BANK OF MINNEAPOLIS,
APPELLANT.[1]

May 21, 1937.

No. 31,334.

[1]Reported in 273 N. W. 628.

*Jesse Van Valkenburg* and *Horace Van Valkenburg,* for appellant.
*Walter U. Hauser,* for respondent.

JULIUS J. OLSON, JUSTICE.

The Marquette National Bank appeals from a judgment entered pursuant to an order granting plaintiff's motion for judgment on the pleadings. Defendant Cotton has not appealed. Hereafter we shall refer to appellant as the bank.

The action was brought pursuant to the provisions of 2 Mason Minn. St. 1927, § 9148, *et seq.,* the so-called unlawful detainer statute. As the court ordered judgment on the pleadings, a summarization of the facts pleaded is essential to an understanding of what is here for decision. On and long prior to November 15, 1935,

plaintiff was the owner of a first mortgage upon the involved real estate. On that date, there being default under the terms of the mortgage, he caused the same to be foreclosed and the property was sold by the sheriff for $2,791.91, plaintiff becoming the purchaser at the sale. The owner of the real estate was defendant Cotton. On November 14, 1936, he caused to be prepared and served upon the plaintiff a notice of motion and complaint in a moratorium proceeding brought by him to obtain an extension of time within which to redeem the mortgaged premises from the aforementioned sale. That matter was made returnable for a hearing on December 5. On November 24 Cotton dismissed that proceeding and filed a dismissal thereof with the clerk of court. The complaint further alleges that "prior to November 15, 1936," plaintiff paid certain taxes against the foreclosed property and that thereafter on November 23 "an affidavit by his agent" was made and filed "stating the items" and describing the premises upon and against which the tax was levied. A copy of this affidavit was furnished to the sheriff, and he also filed the affidavit aforesaid with the register of deeds. Defendant bank by its answer admitted the allegations of the complaint except that it denied being unlawfully in possession of the property. By way of confession and avoidance it claimed and averred that during all the times involved it was the holder of a second mortgage upon the foreclosed premises; that on November 14, 1936, it filed in the office of the register of deeds an appropriate notice of its intention to redeem from the foreclosure sale; that on November 20 it redeemed the premises from said sale by paying $3,010 to the sheriff, that being the amount then due on plaintiff's sheriff's certificate together with his proper fees for making the redemption; that on said last mentioned date it also filed in the office of the register of deeds its promissory note and the second mortgage upon these premises securing the debt, also its certificate of, redemption and the statutory affidavit setting forth the amount due it by virtue of its mortgage lien. No notice of the moratorium proceeding was ever served upon the bank, nor is it claimed that it had actual notice thereof. At the time of commencement of the present action it was in possession of the premises by its tenants

and claimed right of possession by virtue of its title as a redemption creditor. At the commencement of trial. plaintiff moved for judgment on the pleadings. That motion was granted. Judgment was thereupon entered, and the bank appeals.

From the facts stated it is apparent that the entire issue hinges upon whether defendant was in fact a redemption creditor. If its redemption was properly made and became effective as such then obviously plaintiff cannot prevail.

■ Under our statute there are two kinds of redemption. Within a year after the sale the mortgagor may redeem from the foreclosure. If he does so the sale is annulled, as also is the mortgage itself. This is often referred to as an "owner's" redemption. 2 Mason Minn. St. 1927, §§ 9626, 9630, and cases cited under note 1; 4 Dunnell, Minn. Dig. (2 ed.) § 6381a, and cases cited under notes.

If the owner makes no redemption, then a creditor having a lien upon the premises, if he has filed the statutory notice of intention within the year for redemption, may redeem. This is usually referred to as a "creditor's" redemption. It is of purely statutory creation. Its principal object is to have the debtor's property go as far as possible toward the payment of his debt. This is obviously for the benefit of both debtor and creditor. 2 Mason Minn. St. 1927, § 9627, and cases cited under notes. See generally 4 Dunnell, Minn. Dig. (2 ed.) § 6381, and cases cited. The right of redemption, whether by the owner or by a subsequent lien creditor, is a right favored by the law, and statutes are construed liberally in favor of redemptioners. *Id.* §§ 6384, 6386, 6387, and cases cited.

■ The rights acquired by the certificate holder or the one redeeming the property as a lien creditor are well summarized by Mr. Dunnell (§ 6381), as follows:

"At the expiration of the redemption period, if no redemption is made, the purchaser succeeds to the title of the mortgagor as it was at the date of the mortgage and as conveyed by the mortgage. He acquires every right or interest held by the mortgagor in and to the mortgaged property, together with all subsequently acquired rights, easements and privileges, which are essential to the full enjoyment of the property. He is the owner and entitled to all the

rights of ownership. His title is superior to the right of subsequent creditors to set aside a conveyance by the mortgagor claimed to be fraudulent." Cases cited under notes support the text.

■ There is no issue respecting the regularity of the proceedings had either in respect of plaintiff's foreclosure or of the bank's redemption under the statutes generally applicable to such proceedings. The bank's redemption is claimed by plaintiff to be defective in that it failed to take notice of the moratorium proceedings which by the terms of that act (L. 1935, c. 47, Part 1, § 4), so it is claimed, extended the redemption period at least until the time of the hearing; that as such its attempt at redemption is a nullity; and, further, that the amount paid to the sheriff was inadequate in that it did not cover the taxes paid by plaintiff.

Under 2 Mason Minn. St. 1927, § 9648, plaintiff, as the purchaser at the foreclosure sale, had the undoubted right to make payment of taxes upon the foreclosed premises and to tack the amount of such payment to the amount due him under the sheriff's certificate. But, it will be observed, that section required such payment to be *"proved* by the affidavit of the purchaser, his agent or attorney, stating the items and describing the premises, *which must be filed for record with the register of deeds, and a copy thereof shall be furnished to the sheriff at least ten days before the expiration of the year of redemption."* (Italics supplied.) Plaintiff failed to meet these requirements. Not until November 23, three days after the bank had redeemed and eight days after the "year of redemption," did he attempt to comply with the statute. We think, in view of our prior cases, that the quoted language is mandatory. The following cases are helpful: Pamperin v. Scanlan, 28 Minn. 345, 9 N. W. 868; Parke v. Hush, 29 Minn. 434, 13 N. W. 668; Limnell v. Limnell, 176 Minn. 393, 398, 223 N. W. 609. And in Young v. Penn Mut. L. Ins. Co. 192 Minn. 446, 447, 448, 256 N. W. 906, the opinion assumes this to be a requirement that must be met.

The present case is obviously different from Sucker v. Cranmer, 127 Minn. 124, 149 N. W. 16. The statutory remedy here invoked is strictly limited to possession of the property. This kind of action clearly does not permit recovery of the tax paid by plaintiff. Under

that decision plaintiff may find some comfort as to his future course, but clearly that case is of no avail to him here.

■ What was the effect of the moratorium proceeding brought by defendant Cotton insofar as the same related to the bank's right as a redemptioner under its second mortgage? As we have heretofore noted, plaintiff is of the view that the moment the owner of the premises started his proceeding for a moratorium the court had jurisdiction of the entire *res* and that thereby, *ipso facto,* the time for redemption was extended until the court should make "its order" in the premises. He directs our attention to the fact that the moratorium act makes no provision for the service upon or the giving of any notice to junior lien creditors; hence, so he argues, we must assume the legislative intention to have been that all subsequent lien creditors are as fully and effectively bound as the creditor who had gone forward with enforcement of his mortgage and against whom alone notice of the moratorium proceeding is directed. Reading the entire act, we fail to find that such was the legislative purpose. If we were to so hold a serious constitutional question would arise. *Notice and an opportunity to be heard* are universally recognized as essential to due process. Postal Tel. Cable Co. v. City of Newport, 247 U. S. 464, 38 S. Ct. 566, 62 L. ed. 1215; Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 236, 20 S. Ct. 620, 44 L. ed. 747, 750; Simon v. Craft, 182 U. S. 427, 436, 21 S. Ct. 836, 45 L. ed. 1165, 1170. The right to be heard is a "fundamental" requisite. Grannis v. Ordean, 234 U. S. 385, 34 S. Ct. 779, 58 L. ed. 1363; Louisville & N. R. Co. v. Schmidt, *supra;* Simon v. Craft, *supra.* Equally well established is the rule that "a construction which will nullify a statute, in whole or in part, is to be avoided if reasonably possible." 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 8950, and cases cited under note 63. In view of these rules, so long and so thoroughly established as to be axiomatic, it seems clear that the legislature did not intend to bind anyone, in a moratorium any more than in any other proceeding, unless provision for notice and opportunity to be heard were first made.

The mentioned section (L. 1935, c. 47, Part 1, § 4) provides "that *upon the service of the notice or demand* * * * the running of

the period of redemption shall be tolled until the court shall make its order upon such application." It will thus be observed that the statute does not *require* the filing anywhere of the notice of motion or of the application preliminary to the hearing. How, then, in view of the statute, can it be said that anyone having a subsequent lien, and as such directly and vitally interested in the property, is put upon notice in any fashion unless and until served with notice or otherwise informed of the proceeding?

What the statute aims to accomplish (expressly stated in its title and preamble) is to extend the time of redemption for the benefit of the mortgagor, the owner of the equity of redemption, to the end that he may, if able to meet the court's requirements, protect and preserve his interest in the property. That situation does not exist here. The issue is squarely between two creditors, plaintiff seeking to get the property by virtue of his sheriff's certificate, defendant wanting it in diminution or liquidation of its second mortgage. For that purpose and to attain that end, the bank paid to the sheriff, pursuant to and in conformity with statutory requirements pertaining to redemptions, the full amount of the certificate of sale, all accrued interest thereon, and in addition the costs of redemption.

We have said heretofore that the redemption creditor steps into the shoes of the certificate holder and as such is entitled to all the benefits and advantages that go therewith. Necessarily that carries with it also his burdens and limitations, if such there are. If Mr. Cotton had gone forward with his application for a moratorium can there be any doubt that the bank would be required to abide by such order as the court might properly make, with the same effect as such order would have had if the plaintiff had remained the owner of the certificate? By so construing the statute and by so applying it to the specific facts here presented, full and complete justice to all parties would necessarily have followed. Or, if we assume in the instant case, that the owner had redeemed the premises, as he had a perfect right to do, on November 15, would he not have taken the property free and clear of plaintiff's rights under his certificate as well as the mortgage upon which it was founded?

Plaintiff's tax claim, not having been timely filed, could not be considered an essential part of the money required to effectuate redemption. Again, assuming that Mr. Cotton had borrowed the money from the bank with which to make the redemption and had done so, can there be any doubt that the same result would obtain? Yet isn't that exactly the situation plaintiff is in now? He seeks an advantage because of his own neglect and oversight in not complying with statutory directions, the very provisions made for his use and guidance.

■ The moratorium act is remedial in its purpose and is to be liberally construed to make its objectives realizable in its application to existing legal rights and remedies. It is our business so to construe the act as to avoid forfeiture when reasonably possible. This thought was well expressed by Judge Taylor in Needles v. Keys, 149 Minn. 477, 479, 184 N. W. 33, 34, thus:

"The proceeding [to cancel a contract for the sale of land] is in the nature of a strict foreclosure. While the statute must be given full effect, its provisions must be construed in the light of the legislative purpose to afford the vendee an opportunity to save and reinstate his equitable rights by removing the default, and, if the meaning be doubtful, that construction must be adopted which militates against a forfeiture."

Our moratorium act, like many others enacted in other states during recent years, indicates a purpose to relieve distressed debtors but at the same time and with equal clarity seeks to protect and preserve the rights and remedies of creditors having mortgages or other liens upon the property. Inequitable or unfair results to any of them must be guarded against, and no such lien creditor should be deprived of any statutory right or the remedy that was his when his rights became fixed and established when the contract was made, unless some other remedy efficient and sufficient to protect his rights was supplied to take the place of the former remedy. Hence, in interpreting the act to specific issues, such as the one before us, we must always have in mind the purpose suggested. Where room for construction exists it is our business so to inter-

pret the act as to make it a workable one, thereby giving force and effect to the legislative purpose. In the instant case, can it be said with any degree of assurance that the bank could have redeemed after the notice of motion was made returnable, December 5, 1936? And how was the bank to know when to redeem, absent, as here, notice of the proceeding? By dismissing the proceeding, would not that put an end to the moratorium and would not then be the time from which to compute the five-day period within which it might redeem? If such were to be the interpretation it would practically mean that every subsequent lien creditor who had put himself in line of redemption would have to hire a guard to watch from day to day, not only the records in the office of the register of deeds but also those in the office of the clerk of court. That such unreasonable burdens should be cast upon subsequent lien creditors who had put themselves in line of redemption is unthinkable.

Judgment reversed.

MR. JUSTICE LORING took no part in the consideration or decision of this case.