Margaret THELEN, Appellant,

v.

**BRAINERD NATIONAL BANK, Respondent.**

No. C9–84–863.

Court of Appeals of Minnesota.

Dec. 18, 1984.

Robert E. Cattanach and D. Charles Mac-Donald, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Criston Drake, Ryan, Ryan, Ruttger & Drake, Brainerd, for appellant.

John W. Person, Brainerd, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Margaret Thelen appeals from an order dated April 12, 1984, in which the trial court found it had no jurisdiction to reopen a Torrens decree, thus denying her relief on the merits of her claim.

We reverse and remand.

## FACTS

During a one year period, appellant loaned money to C & J Enterprises ("debtor") on three occasions, each time obtaining a separate mortgage on the townhouses being built with the loans ($150,000—first mortgage; $75,000—second mortgage; $50,000—third mortgage). As soon as the first payment on the first mortgage was due, debtor defaulted on the first mortgage and appellant gave notice of a foreclosure sale. The second and third mortgages were not in default at this time. Appellant's attorney bid in the amount of the

first mortgage plus costs at the sheriff's sale. On the same day that appellant noticed the foreclosure sale, respondent obtained a fourth mortgage on the townhouse property based on a pre-existing unsecured debt that the principals of debtor had also defaulted on. Several weeks before the redemption period on the first mortgage foreclosure expired, respondent filed a notice of intent to redeem on its mortgage, the fourth one. Respondent did not send a copy of this notice to appellant's counsel. Appellant's attorney took no further steps relative to her second or third mortgages.

When the time for filing notices of intent to redeem expired, respondent immediately redeemed the property for just the amount of the first mortgage. It is agreed that appellant's three mortgages were all valid, recorded, and that respondent had both constructive and actual notice of all three. The value of the foreclosed property, after payment of the first mortgage, exceeded the debt secured by respondent's $79,000 mortgage. Appellant claims an unjust windfall will go to the respondent bank unless it is ordered that it takes subject to her second and third mortgages. Because the property was registered, respondent arranged for a hearing to finalize the transfer. Appellant was given notice of the hearing through her attorney. Because her attorney was hospitalized at that time, he failed to attend the hearing and contest the matter or otherwise argue her claims. The bank's motion for clear title with no encumbrances was unopposed, and the court entered an order and decree vesting fee simple title in respondent.

After release from the hospital, appellant's attorney promptly petitioned the trial court for relief from that order based on excusable neglect. The court initially granted appellant's motion based on excusable neglect and fundamental fairness to appellant to allow her a short time for discovery and submission of legal briefs relative to her claims. After the filing of briefs, respondent, for the first time, challenged the jurisdiction of the court to vacate its original order. The court concluded that it indeed lacked jurisdiction to vacate that order and, on April 12, 1984, entered an order reinstating its original order which vested fee simple title in the registered property in respondent without the existence of appellant's second and third mortgages showing as valid liens.

## ISSUE

Can the trial court vacate an order from a proceeding subsequent to Torrens registration based upon excusable neglect of counsel and Rule 60.02 of the Minnesota Rules of Civil Procedure?

## ANALYSIS

The trial court has the authority to adjudicate title to Torrens real property after a certificate of title is issued subsequent to the initial decree of registration. Minn.Stat. §§ 508.25, 508.70, and 508.71 (1982 and Supp.1983). The trial court had authority to make "a proper order or decree" when respondent applied to the court for a new certificate. Minn.Stat. § 508.67 (1982). These statutes make the determination of property rights in registered real property the responsibility of the trial court in proceedings subsequent to registration. The use of normal procedural tools of the trial court is therefore necessary to a fair determination of the interests involved. Rule 60.02, empowering a trial court to grant relief from an otherwise final judgment based on a party's excusable neglect, can be invoked. Minn.R.Civ.P. 60.02. Respondent argues the need for finality in Torrens litigation and cites Minn.Stat. 508.-22 (Supp.1983). However, our case does not involve an initial decree of registration; it involves proceedings subsequent. Also, Minn.Stat. § 508.22 states that within Chapter 508 relative to conveyancing and registration, there are matters which the district court *can* look into after the initial registration. The statute specifically includes in two different places: "Except as herein otherwise specifically provided ..." Minn.Stat. §§ 508.70 and 508.71 speak to the power of the court after initial registration to decide adversarial matters.

Respondent was aware of appellant's interest in the land, knew of her three recorded mortgages prior to her foreclosing the first, and was not prejudiced by her counsel's excusable neglect in asserting her rights after the initial judicial order. Respondent loaned money on the property knowing it was taking a fourth position. We also note that respondent, by not taking its fourth mortgage until the day the notice of foreclosure sale on appellant's first mortgage appeared in the paper, effectively prevented appellant's attorney from finding out about respondent's lien by any title search done prior to appellant's foreclosure.

We find the trial court did have jurisdiction to vacate its initial order and hear appellant's claim.

Since the relevant facts concerning the redemption of the mortgages are not in dispute, this court can make a determination on the merits. Respondent's certificate of title is held "free from all encumbrances and adverse claims, excepting only the * * * mortgages * * * as may be noted in the last certificate of title in the office of the registrar * * *." Minn.Stat. § 508.25 (Supp.1983). Appellant's three mortgages were recorded on the last certificate of title, therefore until they are satisfied (the first has been), they remain an encumbrance on the property.

Respondent's reliance on *Graybow-Daniels Company v. Pinotti*, 255 N.W.2d 405 (Minn.1977) and Minn.Stat. § 508.24 (1982 and Supp.1983) is misplaced. First, that case did not involve registered land, thus a different statutory scheme applied. Second, all three senior mortgages in *Graybow-Daniels* were foreclosed. *Graybow-Daniels*, 255 N.W.2d at 406. Had the property been registered, the mortgages would have been removed from the certificate of title when they were foreclosed. Here appellant did not foreclose her second and third mortgages, as she had no intent to redeem. Her intent was simply to leave them perfected as record liens to which future buyers must be bound. Appellant never foreclosed her second or third mort-

gages and thus her property interests should not be extinguished.

The public policy served by Minn.Stat. § 508.24, that favoring alienability of property and the opportunity for creditors to foreclose other lienholders, is not served by denying appellant her second and third mortgages. Had there been intervening judgment creditors between appellant's third mortgage and respondent's mortgage, there would have been some logic to requiring those judgment creditors to file a notice of intent to redeem, and then act on that by paying off the creditors senior to them. If those judgment creditors did so, respondent would not be prejudiced, and would still retain its right to file its notice of intent to redeem. Those intervening creditors should not be allowed to sit back without redeeming while retaining judgment liens to cloud title and interfere with the right of creditors junior to them to redeem from senior creditors, and secure the property for themselves on their debts.

That public policy is not present on these facts, as appellant's second and third mortgages were only junior to her own. Even though *Moore v. Penney*, 141 Minn. 454, 170 N.W. 599 (1919) is cited by respondent for its position as to successive junior lien holders, the majority opinion in *Moore* notes the idle ceremony in a creditor holding successive liens actually transferring money to himself. The opinion requires that the creditor with successive liens need only place documents on file showing an intent to redeem under the junior lien. We find that even requiring a creditor in the position of appellant, that is, one holding the first, second and third valid mortgages on a piece of property, to go through the formality of telling himself that he intends to redeem his second and third mortgages in order to protect them, is also idle ceremony.

Justice William Mitchell of the Minnesota Supreme Court recognized the incongruity of certain redemption statutes as to the same creditor holding successive valid liens. In a well reasoned dissent, Justice Mitchell concluded that a rule technically

requiring a creditor to redeem from himself could produce inequity and lead to an unconscionable result. He wrote:

> [I] am satisfied that the doctrine laid down in [*Pamperin v. Scanlan*, 28 Minn. 345, 9 N.W. 868 (1881)] will work mischievously, and will, in many cases, as in the present case, make the statute a puerile absurdity; for if there be any reason why the plaintiff, who purchased at the execution sales on both the first and second judgment, was required to redeem from himself, on the sale under the execution on the first judgment, in order to prevent his interest acquired under the other execution sale from being cut off by a redemption by defendant under a third judgment, I have failed to discover it. What benefit could such an idle act be to anybody?

*Parke v. Hush,* 29 Minn. 434, 436, 13 N.W. 668, 669 (1882).

If, as to appellant here, we remedy this mischief, the worst thing that can happen is that honest debts will be paid.

## DECISION

The case is reversed and remanded to the trial court to supervise the issuance of a Torrens certificate which properly reflects appellant's second and third mortgages which remain liens on the property.

Reversed and remanded.

FORSBERG, J., dissents.

FORSBERG, Judge, dissenting:

I respectfully dissent. The majority opinion is contrary to *Graybow-Daniels Company v. Pinotti,* 255 N.W.2d 405 (Minn.1977).